[Civ. No. 30112.    Second Dist., Div. Five.    Sept. 29, 1967.]

KEYSTONE MORTGAGE CO., INC., Plaintiff and Appellant, v. JACK H. MacDONALD et al., Defendants and Respondents.

Vaughan, Brandlin, Robinson & Roemer and Richard I. Roemer for Plaintiff and Appellant.

Charles J. Katz and Samuel W. Blum for Defendants and Respondents.

HUFSTEDLER, J.—Appellant, Keystone Mortgage Co., Inc. (''Keystone''), a licensed real estate broker, sued Jack H. MacDonald and his coadventurers (''MacDonald'') to recover a $7,000 broker's fee alleged to have been earned by obtaining a loan commitment complying with a written authorization. Judgment was entered for MacDonald following the granting of MacDonald's motion for judgment pursuant to section 631.8 of the Code of Civil Procedure,[1] from which Keystone appeals.[2]

### Summary of the Evidence

. On November 14, 1960, MacDonald signed a written agreement prepared by Keystone employing Keystone to obtain a trust deed loan on a described parcel of real property ''in the amount of $700,000.00 for a term of 20 years payable in monthly installments of $5,117.00 including principal and interest at a rate not to exceed $6\frac{1}{4}\%$ per year.'' The contract further provided, ''In consideration of your services I agree to pay you $7,000.00 or One % of the amount of the loan approved by the lender and accepted by me. This may be taken as an order and receipt for your commission on any escrow in which the loan funds are placed for disbursement, and the escrow agent is instructed to pay you accordingly. . . . In the event you are successful in obtaining a commitment on the terms above specified, or upon any other terms approved by me in writing, and I refuse or fail for any reason

---

[1]Section 631.8 provides: ''After a party has completed his presentation of evidence in a trial by the court, the other party . . . may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make findings as provided in Sections 632 and 634 of this code. . . .

''If the motion is granted, unless the court in its order for judgment otherwise specifies, such judgment operates as an adjudication upon the merits.''

[2]Keystone also named as defendant Jack H. MacDonald Company, Inc. The trial court found that Jack H. MacDonald, individually, was not acting as the corporation's agent in signing the contract upon which the suit was brought. The finding is unchallenged on the appeal, and the appeal as to the corporation is accordingly deemed abandoned. (*E.g.,* *Title Guar. & Trust Co.* v. *Fraternal Finance Co.* (1934) 220 Cal. 362, 363 [30 P.2d 515].)

to accept said loan, then I hereby agree to pay you upon demand as compensation for your services, an amount equal to One % of the face amount of said loan. . . . It is my further understanding, and I hereby agree to the following requirements as a part of the loan . . . Assignment of a noncancellable lease with Insurance Company of North America covering the entire second and third floors of said building for a term of 15 yrs. at an annual rental of $96,140.00.''

Keystone did not procure a commitment on the terms specified in the agreement, but on December 15, 1960, Keystone did obtain a commitment from Franklin Life Insurance Company (''Franklin'') for $700,000 for 19 years with interest at the rate of 6¼ percent per annum, payable in monthly installments of $5,253.30, principal and interest, plus deposits for taxes and insurance, subject, however, to 14 conditions, including the following: ''10. Receipt of 2% Standby Fee on or before 1/5/61, to be returned to borrower at time of loan closing, but if loan not closed said fee to be retained by Franklin. . . . 14. This commitment is predicated on a non-cancellable lease to Insurance Company of North America for a term of 15 years at an annual guaranteed rental of $96,140.00. Further subject to leasing of area, prior to loan closing, to tenants acceptable to Franklin to provide annual rentals of not less than $30,000.00. All terms, conditions, provisions and agreements contained in said leases are subject to approval of our Legal Department.'' The commitment further provided, ''This commitment will expire Jan. 31, 1962, and the loan is to be delivered during January, 1962. The Franklin reserves the option to call for delivery of the loan at any earlier date provided the loan has been closed and is ready for delivery.'' Jack H. MacDonald endorsed upon the commitment document the notation, ''Accepted: 28th of December, 1960.''

The trial court found that MacDonald paid the $14,000 standby fee on January 3, 1961, which was never returned. Franklin disapproved the North American lease, and the lease was never renegotiated to meet Franklin's stated objections. MacDonald in good faith tried to secure the additional tenants to yield $30,000 per year income, but was unable within the period of the Franklin commitment to obtain more than a single tenant producing $7,000 annual rental. The Franklin loan was never delivered. When it became apparent that the Franklin conditions could not be met because Franklin would not approve the North American lease and MacDonald could not obtain the other leases, both Keystone and MacDonald

looked elsewhere to arrange the financing. Keystone produced a $600,000 commitment which MacDonald did not accept. In May of 1961, after Keystone's exclusive authority expired and without Keystone's assistance, MacDonald obtained a commitment for a more favorable loan from New York Life Insurance Company, which was ultimately consummated.

Keystone contends that it earned its commission by procuring the Franklin commitment and that MacDonald is estopped to deny that Franklin was ready, willing, and able to make the loan by reason of MacDonald's acceptance of the Franklin offer which, it argues, fully complied with the employment agreement. Keystone further contends that MacDonald cannot rely upon the failure of the conditions precedent in the Franklin commitment to relieve MacDonald of paying the commission because MacDonald's own acts prevented fruition of those conditions.

### Construction of Employment Contract

■ In order for a loan broker to recover a commission, "the agent . . . must have placed his client in touch with a customer, ready, able, and willing to make the loan, or must have carried on negotiations to such a point as to secure from the prospective lender an unqualified agreement to make the loan upon the terms proposed." (*McCoy* v. *Zahn Corp.* (1920) 183 Cal. 191, 195 [191 P. 20].) ■ Keystone claims that it is entitled to its commission even though the loan was not consummated, because MacDonald's signature on the Franklin commitment estopped MacDonald from asserting that Franklin was not ready, willing and able to make a loan on terms acceptable to MacDonald. If Franklin had made a valid, unconditional offer to loan accepted by MacDonald, Keystone's claim would be unassailable, but Franklin's offer to loan was not unconditional. "When the contract is conditional, however, the broker's commission is not earned if the condition is not performed. (*Colton* v. *O'Brien*, 217 Cal. 551, 553 [20 P.2d 43]; *Wiseman* v. *Rose*, 202 Cal.App.2d 138, 142 [20 Cal.Rptr. 565]; see *Britschgi* v. *McCall*, 41 Cal.2d 138, 144-145 [257 P.2d 977].)" *Kopf* v. *Milam* (1963) 60 Cal.2d 600, 605 [35 Cal.Rptr. 614, 387 P.2d 390].

The situation can be readily illustrated by a hypothetical case within the familiar context of a real estate brokerage transaction. A home owner employs a real estate broker to sell his house for $25,000, payable $5,000 down, the balance to be paid by a promissory note secured by a first deed of trust on the premises. The broker produces a buyer who offers to pur-

chase the house for $20,000, payable $5,000 down, the balance upon the same terms described in the broker's employment contract, except that the purchaser's offer states expressly, "subject to my obtaining a twenty-year loan in the face amount of $15,000 at not more than 6.6% interest from an institutional lender" on or before a date specified. The seller writes on the deposit receipt embodying those terms "Accepted" and signs his name. Until the express condition precedent happens, the broker is not entitled to his commission because he has not produced a buyer ready, willing and able to purchase. This is the situation in *Kopf* v. *Milam, supra,* 60 Cal.2d 600. ■■ However, if the condition occurs, the broker's right to his commission cannot be defeated by the seller's claim that the purchaser or the terms were not acceptable to him or did not comply with the broker's employment contract. (*Wesley N. Taylor Co.* v. *Russell* (1961) 194 Cal. App.2d 816, 828 [15 Cal.Rptr. 357].)

To avoid the impact of the *Kopf* rule, Keystone relies on the language of the employment contract binding MacDonald to pay the commission if Keystone "[1] was successful in obtaining a commitment on the terms above specified, or [2] upon any other terms approved by me in writing, and [3] I refuse or fail for any reason to accept said loan." [Bracketed numbers added.] Keystone argues in its briefs that the conditions precedent in the Franklin offer to loan were themselves "terms approved" by MacDonald and that the nonperformance of the conditions constituted "a refusal or failure" by MacDonald "for any reason to accept said loan." Upon oral argument Keystone changed its position contending, in effect, that the language of the employment contract "upon any other terms approved by me in writing" meant that Keystone earned its commission as soon as MacDonald endorsed the word "Accepted" upon the Franklin commitment and signed the commitment, even though Franklin never delivered a loan.

Keystone's argument in its briefs assumes that the term "commitment" used in phrase [1] and the words "said loan" used in phrase [3] are synonymous and that both terms mean an offer to lend whether or not the offer is subject to conditions precedent to the delivery of a loan imposed by the lender. Upon oral argument Keystone conceded that the words "said loan" used in phrase [3] mean an unconditional offer to lend money. The concession was required by the language of the instrument and by the purpose of the employment contract. ■■ "A loan of money is a contract by

which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equivalent to that which he borrowed. . . ." (Civ. Code, § 1912; *Milana* v. *Credit Discount Co.* (1945) 27 Cal.2d 335, 339 [163 P.2d 869, 165 A.L.R. 621].) ■ The word "loan" should be given its ordinary meaning unless from the context of the instrument in which it is used a different meaning must be ascribed to it to fulfill the intent of the parties. The employment contract uses the term "said loan" not only in phrase [3] but also in other provisions, indicating that the term was used in its ordinary sense. Thus, MacDonald agreed to pay "One % of the amount of the loan approved by the lender and accepted by me;" and to pay "an amount equal to One % of the face amount of said loan." The parties' evident intention was to use "loan" to designate an amount of money unconditionally offered by the lender to the borrower. The purpose of the employment contract was to find a lender willing to provide the financing MacDonald needed to develop the real property to be secured by the trust deed. That purpose could not be fulfilled until a firm loan was procured.

■ MacDonald did not fail or refuse to accept a loan (phrase [3]) because no loan was offered. Keystone was not successful in obtaining a commitment on the terms specified (phrase [1]). Therefore, to support its claim, Keystone was left with the argument that its commission was earned as soon as MacDonald endorsed the Franklin conditional offer, on the theory that the offer was a "commitment" which MacDonald "approved" (phrases [1] and [2]). To support its contention Keystone now says that "commitment" means a conditional offer to lend, even though "said loan" means an unconditional tender of the loan and that phrase [3] does not impose a limitation on phrase [2]. Even if we assumed that "commitment" as used in the first phrase is not synonymous with "said loan" used in the third phrase, Keystone's construction is not acceptable. Keystone's interpretation drains all meaning from the third phrase. No purpose is served by referring to a refusal or failure to accept an unconditional loan if the broker earned his commission at the moment a conditional offer to lend was secured and approved. The second and third phrases must be read together. As thus read, Keystone earns its commission upon the happening of four events: Keystone obtains a commitment upon terms other than those expressly stated; MacDonald approves that commitment in writing; an unconditional loan pursuant to the commitment is tendered to MacDonald; and MacDonald fails or refuses for

any reason to accept the tendered loan. Since these events did not all occur, Keystone did not earn its commission.

### Performance Not Prevented

MacDonald owed Keystone a duty not to act arbitrarily or in bad faith to prevent the occurrence of the conditions upon which Keystone's right to compensation depended. *(Stromer* v. *Browning* (1966) 65 Cal.2d 421, 424 [55 Cal. Rptr. 18, 420 P.2d 730].) If Keystone had proved that MacDonald prevented the happening of the conditions precedent in his contract with Franklin, Keystone could recover its commission despite the failure of the conditions in the Franklin agreement. Keystone did not do so. The trial court found that MacDonald could not secure the leases which Franklin required even though MacDonald diligently and in good faith tried to produce them. The leases were not procured until after the term of the Franklin commitment expired. Franklin disapproved the North American lease. Franklin's refusal to approve the North American lease was not induced by any action of MacDonald.

Keystone's final contention is that by obtaining a loan commitment from a different source in May of 1961 MacDonald caused the nonperformance of Franklin's agreement with Keystone. Upon the facts of this case no causal connection was established between the nonperformance of the Franklin agreement and MacDonald's act in obtaining another loan commitment. The acceptance of the other commitment did not prevent the conditions precedent from occurring. The failure of MacDonald to secure the required leases and the disapproval by Franklin of the North American lease were not in any respect attributable to the acquisition of the other commitment. If the conditions precedent had happened, of course, MacDonald would have been liable to pay Keystone's commission even though he ultimately rejected a tendered loan from Franklin in favor of accepting another commitment. The fact standing alone that MacDonald negotiated a new commitment is not enough to charge MacDonald with bad faith. The plain fact is that, as MacDonald and Keystone knew, MacDonald was unable to perform or to cause performance of the express conditions precedent in the Franklin agreement upon which Keystone's right to a commission rested.

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.