[Civ. No. 31986.   Second Dist., Div. Four.   Sept. 11, 1968.]

HAYWARD TAMKIN & CO., INC., Plaintiff and Appellant,
v. CARPENTERIA INVESTMENT COMPANY et al.,
Defendants and Respondents.

Harry Graham Balter and J. Howard Sturman for Plaintiff and Appellant.

David A. Matlin for Defendants and Respondents.

COLLINS, J. pro tem.*—This appeal concerns the propriety of a summary judgment granted on motion of defendants in an action to recover a loan broker's commission.

Plaintiff is Hayward Tamkin and Co., Inc., described as a mortgage banking corporation (whose corporate name prior to

---

*Assigned by the Chairman of the Judicial Council.

September 7, 1965, was Security Mortgage Investment Co. of California). Defendants are Carpenteria Investment Company, a limited partnership, comprised of A. G. Tutor, the only general partner, and seven limited partners.

The pleadings admit that, on September 2, 1965, plaintiff and Carpenteria entered into a written ''Loan Procurement Agreement,'' so-called, the essential provisions of which were that Carpenteria employed plaintiff to obtain a real estate loan of $950,000 for permanent financing of a shopping center project for which plaintiff was to be paid a commission of $9,500. The agreement is a form imprinted on the stationery of plaintiff. The concluding paragraph of the agreement reads as follows: ''The parties hereto have read this Agreement and fully understand and accept the same. Any verbal or written promises or commitments, other than those stated in this Agreement, shall be null and void and shall have no bearing on this Agreement.'' The agreement, by its terms, was to expire on October 4, 1965, but prior to that date the parties agreed in writing to an extension to October 25, 1965.

The complaint further alleges, and the answer denies, that on September 22, 1965, plaintiff, pursuant to the terms of said agreement, submitted to Ohio National Life Insurance Company (hereafter Ohio National) a loan proposal, in which the latter, shortly thereafter expressed interest and requested Carpenteria to complete and sign its '' Commercial Investment Application'' form for such a loan. Carpenteria did so on or about October 5, 1965, acting through its general partner, Tutor; that this application was still pending on October 25, 1965; that subsequent to the October 25, 1965, expiration of the Loan Procurement Agreement, as extended, Carpenteria and Tutor ''urged and encouraged plaintiff to continue its efforts to obtain a written loan commitment from Ohio National'' with the result that on November 12, 1965, the latter issued its written commitment in accordance with the agreement and the loan application which Carpenteria had submitted.

On the basis of these asserted facts, plaintiff claims that it has earned the agreed commission of $9,500. Defendants deny any indebtedness to plaintiff.

Defendants' notice of motion for summary judgment filed October 13, 1966, was supported by an affidavit made by the general partner, Tutor. Defendants also relied on answers made by plaintiff's officers to interrogatories propounded by defendants.

Plaintiff's opposition to the motion was supported by a counter-affidavit of its assistant vice president, J. M. Gilpin.

Defendants' principal contention is that plaintiff could not possibly make out a case for recovery under the Loan Procurement Agreement for the reason that Ohio National's loan commitment dated November 12, 1965, contained terms at variance with the provisions of the Loan Procurement Agreement of the parties and were not acceptable to defendants. A secondary contention by defendants is that the basic employment agreement on which plaintiff sues was not extended beyond October 25, 1965, and its termination date was not otherwise waived by conduct, that therefore the loan commitment admittedly made by Ohio National on November 12, 1965, does not consititute performance as agreed. Of course this secondary contention would be moot in case the primary contention is meritorious.

In support of their principal contention, defendants assert that the Ohio National loan commitment on November 12, 1965 (as amended by letter dated December 8, 1965)[1] introduced new conditions referred to as "Loan Requirements," specifically as follows:

1. The seven individually identified limited partners of the defendant partnership, along with Tutor, the general partners shall "sign personally."[2]

2. There shall be assigned to Ohio National four specified long-term leases providing for individual minimum annual rentals aggregating not less than $140,000 a year.

3. There shall also be obtained and assigned separate leases for a restaurant, liquor store, and shoe store, respectively.

4. The initial disbursement on the loan shall be $800,000 upon completion of the project; disbursement of the remain-

---

[1]Copies, but not the original, of the December 8, 1965, letter bore the typed statement: "FOR INFORMATION PUPOSES ONLY—NOT TO BE USED FOR FINANCING PUPOSES AT ALL." The purpose and meaning of this statement has not been explained by plaintiff or Ohio National, but there has been no denial of defendants' contention that the letter itself was intended to amend the November 12, 1965, loan commitment by specifying some of the conditions on which Ohio National would make the loan. In fact, Ohio National's letter of transmittal dated December 10, 1965, refers to the December 8 letter as an amendment, and states: "We will require acceptance of Commitment as well as acceptance of the Amendment."

[2]Defendants contend the language means that the individuals must sign a promissory note for $950,000 and the trust deed securing same. Since plaintiff does not make any different contention, we accept defendants' interpretation of the quoted words "sign personally."

ing $150,000 shall be made upon Ohio National's approval of additional tenants committed to pay annual rents aggregating an additional $45,000.

Between December 8, 1965, and February 22, 1966, when defendants were advised by letter that Ohio National was terminating the loan negotiations, defendants made efforts to obtain leases for a restaurant, liquor store and shoe store, and with Mode O'Day, and also efforts were made to have Thrifty Drug Stores agree to an amendment of its lease to provide for a guaranteed minimal rental from the lease's commencement date. Plaintiff contends these activities constitute evidence of defendants' acceptance of the condition imposed by the December 8, 1965, amendment, and argues that it was not the conditions themselves but defendants' inability to fulfill them that was responsible for breakdown of negotiations for the Ohio National loan.

Plaintiff points out that defendant Tutor's affidavit in support of the motion alludes to, but does not incorporate, originals or certified copies of various documents (particularly the Thrifty Drug Stores lease which never contained a minimal guaranteed rental). On this basis, plaintiff's opening brief urges the applicability of the well-established and salutary rule which governs determination of a motion for summary judgment, to-wit, that affidavits of the movant are "strictly construed" (citing 2 Witkin, Cal. Procedure (1954) Proceedings Without Trial, § 77, p. 1714), and the supporting principle that "where the affidavit of a movant depends upon written documents, his affidavit is insufficient unless there is attached thereto the original documents, or a verified or certified copy of such instruments." (Citing *Callahan* v. *Chatsworth Park, Inc.*, 204 Cal.App.2d 597, 606 [22 Cal.Rptr. 606]; *Martens* v. *Winder*, 191 Cal.App.2d 143, 147 [12 Cal.Rptr. 413].)

This argument overlooks a qualification of the "strictly construed" rule applicable to a movant's affidavit which applies in a case where the movant is a defendant.

As the Supreme Court has recently stated in *Joslin* v. *Marin Municipal Water Dist.*, 67 Cal.2d 132, at pages 148, 149 [60 Cal.Rptr. 377, 429 P.2d 889]: "The foregoing makes it clear that a moving defendant, unlike a moving plaintiff, need merely establish a defense to a claim theretofore asserted 'in the action.' His supporting affidavits are responsive in nature and are necessarily addressed to the complaint. It is within

the contemplation of section 437c that the factual matters which he sets out in such affidavits are to take their significance upon a consideration of the complaint. In no way departing from the rule that such affidavits are to be strictly construed, it would nevertheless be placing form before substance if we were to require that a moving defendant's affidavits which assert facts establishing a defense when considered with the particular claim relied upon by plaintiff, must be deemed insufficient because they further fail to repeat therein those matters already asserted in the complaint. In such a case, the repetition of the substance of the complaint would be a useless act, the doing of which the law does not require. (Civ. Code, § 3532.) ''

We must keep in mind that plaintiff sues on a written agreement, namely, the Loan Procurement Agreement of September 2, 1965, as amended by a written extension agreement dated October 4, 1965, which documents are attached to the complaint as Exhibits A and B, respectively.

Accordingly, under the rule enunciated in *Joslin, supra,* Tutor's affidavit is to be viewed against the background of plaintiff's complaint. So viewed it shows, and plaintiff's counter-affidavit does not refute, that plaintiff has failed to show performance, or even readiness and ability to perform the terms of the Loan Procurement Agreement on which it sues, even if we accept, *arguendo,* plaintiff's contention that the agreement's termination date was waived by conduct on the part of defendants (cf. *Love* v. *Gulyas,* 87 Cal.App.2d 608, 618 [197 P.2d 405].)

As the court observed in *People* ex rel. *Mosk* v. *City of Santa Barbara,* 192 Cal.App.2d 342, 349 [13 Cal.Rptr. 423] : ''Where the affidavits do not present any triable issue of fact, then the problem is resolved into a question of law and the trial court determines the issue of law.''

Here the trial court, acting in accordance with the authorization contained in Code of Civil Procedure, section 437c, ordered plaintiff's complaint stricken.[3] The trial court thus concluded that the facts presented showed the nonexistence of a cause of action as pleaded, with the result that no triable issue of fact remained in the case.

---

[3] The summary judgment recites in part: ''. . . and the Court having heretofore granted the said Motion for Summary Judgment on the statutory ground that the action has no merit and no triable issue of fact is presented:

''IT IS HEREBY ORDERED that the Complaint of Plaintiff, HAYWARD TAMKIN & Co., INC., be and that the same is hereby stricken. . . .''

We are quite mindful of the warning that the summary judgment procedure must "be used with caution in order that it may not become a substitute for existing methods in the determination of issues of fact." The court's function in considering an application for summary judgment is limited to determining whether the opposing party "has presented any facts which give rise to a triable issue. . . ." (*Eagle Oil & Refining Co.* v. *Prentice,* 19 Cal.2d 553, 555, 556 [122 P.2d 264].)

"Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. ■ The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. . . . ■ Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts. [Citations.]" (*Stationers Corp.* v. *Dun & Bradstreet, Inc.,* 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; also see *Joslin* v. *Marin Municipal Water Dist., supra,* 67 Cal.2d 132 at page 147.)

Plaintiff urges that triable issues remain in the case because, in the opposing affidavit of its assistant vice-president, Gilpin, it has adverted to customs and usages applicable to a case of this sort, e.g., (a) a requirement for personal signature of all the principals, i.e., general and limited partners of Carpenteria, on the note and trust deed securing the loan; and (b) the lender's expectation, willingness and common practice to permit substitution of new tenants for those named in the original proposal (such as Mode O'Day).

Plaintiff's brief acknowledges that custom and usage is only an instrument of contractual interpretation (citing Code Civ. Proc., § 1861; Civ Code, § 1646; and new Evid. Code, § 1105), which may not be used to create a contract (citing *Ghiselin* v. *John Hancock etc. Ins. Co.,* 79 Cal.App.2d 438, 441 [180 P.2d 50]; also see *Peiser* v. *Mettler,* 50 Cal.2d 594, 610 [328 P.2d 953, 74 A.L.R.2d 1]). Nevertheless, plaintiff is actually arguing for new and additional contractual stipulations when it asks us to resort to custom and usage in order to create a duty on the part of the limited partners of Carpenteria to sign and thereby incur not only the status and lia-

bility of a general partner but also would make them primary obligors for the full amount of the loan. This contention would stretch the doctrine of custom and usage beyond all permissible limits when we note the provision of the Uniform Limited Partnership Act that "[a] limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business." (Corp. Code, § 15507.)

Plaintiff cites no authority which directly supports its position and we have been unable to find any. On the contrary, the teaching of the cases is that custom and usage cannot change a rule of law (Rest., Contracts, § 249, p. 355.) *A fortiori* custom and usage cannot override positive statutory law. For example in *Kohn* v. *Sacramento Elec. Gas & Ry. Co.*, 168 Cal. 1 at page 7 [141 P. 626] the argument was advanced that funded bonds having long been treated as negotiable instruments "the courts must respect the custom of the country and must make the letter of the statutes bend to it." The court's answer in that case was: "Custom is often very important, it is true, in assisting courts to interpret statutes properly, but it never overcomes the positive provisions of statutes." To like effect is *American Nat. Bank* v. *A. G. Sommerville Inc.*, 191 Cal. 364 at page 371 [216 P. 376], where the court adopted the same response to an argument that a conditional sales contract should be treated as negotiable by reason of custom in the automobile sales and distribution business despite clear statutory language that such contracts are non-negotiable instruments.

Defendants have cited the case of *Keystone Mortg. Co.* v. *MacDonald* (1967) 254 Cal.App.2d 808 [62 Cal.Rptr. 562], a recent case which was concerned with financing negotiations similar to those involved here. However, as plaintiff points out, the *Keystone* case did not present, and its decision did not turn on, any principle of custom and usage. Nevertheless, the case is of interest, although not controlling, on the negative side, for there no contention was made that deficiencies in the loan broker's proof of performance under his agreement could be supplied by resort to custom and usage.

Here plaintiff seeks to support its argument by pointing out that defendant Carpenteria and its general partner, defendant Tutor, must be deemed to have known from the outset that the limited partners would be required to sign the loan

instruments because their asserted agent, Funtas, was told that "the lender undoubtedly would require personal signatures of all of the principals of Carpenteria" and thereafter Tutor signed the Loan Application which recited that "Personal financial statements . . . for all parties signing note and mortgage should be attached hereto." Gilpin's affidavit adds that Tutor submitted financial statements of himself and some nine other persons.[4] It is argued that on this basis the limited partners are bound by the acts of Funtas and Tutor, or at least they are estopped to repudiate them. Such is not the law. Corporations Code, section 15501, states in part that "[t]he limited partners as such shall not be bound by the obligations of the partnership." It has been held that the general partner does not have authority to contract for the limited partners. (*Donroy, Ltd.* v. *United States* (9th Cir. 1962) 301 F.2d 200; see 38 Cal.Jur.2d, Partnership, §§ 184-189, pp. 173-180.)

Our review of the record persuades us that the trial court properly determined that there was no triable issue of fact to support the cause of action pleaded in the complaint.

Since the Gilpin affidavit does not assert and appellant has not alternatively contended that any evidentiary theory other than custom and usage is available to support a claim of contractual obligation on the part of limited partners to assume and perform this indispensable condition of the lender's commitment, we must conclude that appellant has tendered no triable issue of fact. This determination renders it unneccessary for us to treat the remaining conditions and the evidence available to establish a prima facie case as to any of them.[5]

The judgment is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

[4]It is worthy of note that four of the persons named by Gilpin (Michael, Vincent and Mary Papelian and Reuben Derderian) are not listed as limited partners, or otherwise, in Tutor's affidavit, and one person who is listed as a limited partner (Ronald Tutor) did not submit a financial statement.

[5]At oral argument appellant urged upon us the applicability of the recent Supreme Court decision in *Masterson* v. *Sine* (1968) 68 Cal.2d 222 [65 Cal.Rptr. 545, 436 P.2d 561]. This case was concerned with the admissibility of extrinsic evidence to interpret and supply inadequacies in written contractual documents. Neither *Masterson* nor the more recent case of *Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage & Rigging* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641] treat the unavailability of custom and usage to override statutory law. Therefore we treat appellant's reliance thereon as misplaced.