Howard A. SUNSHINE, individually and dba Sunshine Exploration Company, Appellant,

v.

Peter N. MANOS et al., Appellees.

No. 698.

Court of Civil Appeals of Texas, Tyler.

May 31, 1973.

Rehearing Denied June 28, 1973.

David M. Kendall, Jr., Woodruff, Kendall & Smith, Dallas, for appellant.

Peter S. Chantilis, Coffee, Coffee & Chantilis, Dallas, for appellees.

MOORE, Justice.

This is an appeal from a summary judgment. Plaintiff, Howard A. Sunshine, dba Sunshine Exploration Company, sued defendants, Peter N. Manos and James A. Muncey dba Manos & Muncey Architects, a partnership, for breach of a loan brokerage contract alleging that on April 12, 1972, the parties entered into a letter agreement by the terms of which defendants offered to pay plaintiff a 1% commission provided he could obtain and deliver to defendants a loan within thirty days of between $560,000.00 and $575,000.00, at a rate of interest of "9.67% constant or better (equivalent to 8¾%—25 year)." Plaintiff further alleged that the letter agreement provided that in consideration for his efforts, defendants promised to pay plaintiff a fee equivalent to one (1%) per cent of the loan amount for services rendered; that he obtained a loan commitment in accordance with the contract but defendants refused to accept it and wrongfully terminated the contract prior to the expiration of the thirty-day period provided in the contract. His prayer was for judgment against the defendants for $5,600.00. Plaintiff filed a motion for summary judg-

ment under Rule 166–A, Texas Rules of Civil Procedure, alleging that under the pleading, affidavits and other summary judgment evidence he performed the agreement "except to the extent he has been prevented from performing by the failure and refusal of Defendants to do their part," and he was therefore entitled to damages in the amount of the agreed 1% fee as a matter of law. Defendants answered with a general denial. Defensively, they alleged that plaintiff failed to deliver them a loan commitment at a rate of 9.-67% constant in accordance with the agreement and that they never agreed at any time to accept a commitment calling for a rate of 9.80% constant which was proposed by the lender, Oak Cliff Savings and Loan Association. They further alleged that the contract was unilateral and they had a right to terminate and rescind same which they did. Defendants also filed a motion for summary judgment alleging that the pleadings and summary judgment evidence show as a matter of law that (1) plaintiff failed to obtain a loan in accordance with the agreement and (2) the agreement was unilateral and defendants rescinded the offer and terminated the agreement and were therefore not liable to plaintiff as a matter of law.

After a hearing the trial court denied plaintiff's motion for summary judgment but granted defendants' motion and entered a summary judgment in favor of defendants. From this judgment plaintiff duly perfected this 'appeal. The parties will hereinafter be referred to as they were in the trial court.

The pertinent parts of the letter agreement are as follows:

"This is your authorization to proceed to secure for our benefit a mortgage loan secured by the above project and property. The terms and conditions of said loan can be: Loan Amount: $560,000.00 to $575,000.00—Rate: 9.67% (constant, or better, (equivalent to 8¾%—25 yr.).

"From the above date you are authorized to work in our behalf exclusively for a period of not less than thirty (30) calendar days. If at the end of the thirty day period, you have in progress the processing of said loan, there will be an automatic extension of fifteen calendar days.

"In consideration of your efforts in our behalf, and upon delivery of a commitment in accordance with the terms above stated, or terms as modified and agreed to by us, we agree to accept the commitment and to pay Sunshine Exploration Company, or assigns, a fee equivalent to one (1%) per cent of the loan amount for services rendered.

"If you are successful in placing this loan, we shall consider that lender your exclusive lender for a period of two (2) years from the date the loan commitment was issued, and we shall not seek to obtain a loan from him without going through you, or your assigns, as broker for us."

Both parties signed the agreement on April 12, 1972. On the day the agreement was executed plaintiff commenced performance by contacting the Oak Cliff Savings and Loan Association and requesting a loan on behalf of the defendants for $575,000.00 at 8¼% to 8⅝% interest amortized over twenty-five years. The company later advised plaintiff that it would make a $550,000.00 loan at the rate of 8¾%. After further negotiations with plaintiff, the company agreed to a $560,000.00 loan at 9% amortized over twenty-eight years. On April 18, 1972, plaintiff called defendant Peter N. Manos and told Manos that he could procure a loan in the amount of $560,000.00 at 9% interest amortized over a period of twenty-eight years. Mr. Manos construed this statement as an attempt on the part of plaintiff to vary the terms of the letter of agreement. In the course of the conversation, Mr. Manos then requested that plaintiff cease efforts to procure the loan and on April 19, 1972, defendants wrote a let-

ter to plaintiff advising him to cease work on the loan. Thereafter, on or about April 21 or 22, 1972, defendants received a letter from plaintiff dated April 20, 1972, enclosing a real estate loan application from the Oak Cliff Savings and Loan Association. The loan application reads, in part, as follows:

"We hereby apply to Oak Cliff Savings and Loan Association * * * for a loan of $560,000.00 for 25 years, with 28 years amortization, with 9% interest per annum. This loan is to be repaid in 299 monthly installments of $5,388.00 including interest at the rate of 9% * * * and is to be secured by a first lien on the property * * *. With a baloonpayment at the time of the 300th installment. * * * the Sponsors will endorse the top 25% of the loan amount ($560,000.00), and for the balance the Lender shall look to the real estate and improvements thereon."

According to the affidavit of Donald L. Hanson, Vice President of Oak Cliff Savings and Loan Association, the loan which his company proposed was a loan for $560,000.00 at 9% for a twenty-five-year term on the note but was to be amortized on a twenty-eight-year term to keep the rate constant at 9.80%. Other provisions of the proposed loan required the borrower to pay a 1% initial loan fee. Defendants did not sign or return the application and plaintiff does not contend that they agreed to the terms proposed. There is nothing in the record showing that plaintiff made any effort to secure another loan within the thirty-day period allowed by the contract, or that defendants ever secured a loan from other sources.

By points two through six, plaintiff contends that the trial court erred in rendering summary judgment in favor of defendants. In reply defendants argue first that the judgment must be sustained because the record conclusively shows that plaintiff failed to comply with the agreement in that

he failed to obtain a loan and secondly, that the agreement being unilateral, defendants had a right to rescind it at any time and therefore no breach of contract was shown. We have concluded that the defendants failed to discharge their burden of demonstrating that no genuine issue of fact existed on any element of plaintiff's cause of action and therefore the trial court erred in granting a summary judgment in favor of defendants. Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.1970).

The letter agreement, as we view it, amounted to an offer to make a unilateral contract. There was no exchange of promises, no mutuality and no consideration at the time defendants signed the letter. Yet defendants appointed plaintiff as their exclusive agent for thirty days and promised to pay plaintiff the commission, provided he could get a loan commitment within that time. Plaintiff made no promise, did not agree to try to get a loan commitment, but was free to either pursue the matter or not. The writing itself was not binding as a contract. It was only an offer to make a unilateral contract—an offer to pay for an act to be performed, a commitment for a loan.

■ Where a contract is unilateral on its face, it does not come into existence as a binding contract until the broker has performed, or at least partly performed, his duties under the agreement. Prior to that time, it is nudum pactum and may be revoked by the offeror at any time. Patton v. Wilson, 220 S.W.2d 184 (Tex.Civ.App., 1949, n. r. e.); 12 Am.Jur.2d sec. 32, p. 796.

■ The principal may of course revoke a unilateral offer but there is a distinction between his power to revoke and his right to revoke. He may at any time before full performance revoke the authority of an agent so the agent will lose his authority to bring the principal into legal relations with a third party. However, if he has no right

to revoke it, he will be liable for damages suffered by the agent by reason of the wrongful revocation. McDonald v. Davis, 389 S.W.2d 494, 497 (Tex.Civ.App., Houston, 1965). There is nothing in the contract giving defendants a right of rescission.

The promise which the defendants made in this instance was such that they should have expected to induce action of a substantial nature on the part of the plaintiff. It is without dispute that plaintiff did subsequently enter upon performance and expended at least some time and effort in attempting to negotiate the loan before defendants rescinded.

This brings us to the question of whether partial performance of the consideration will ripen into a contract so as to make such unilateral offer irrevocable. The question has sharply divided judicial opinion. See the authorities cited in Hutchinson v. Dobson—Bainbridge Realty Co., 31 Tenn.App. 490, 217 S.W.2d 6 (1931). In some jurisdictions it is held that there must have been a complete performance of the unilateral contract by the agent before there would be a binding contract. 28 A.L.R. 894. The decisions in this state, however, seem to indicate that partial performance of a unilateral contract is sufficient to make the same a binding contract. Park v. Swartz, 110 Tex. 564, 222 S.W. 156 (Tex.1920); Patton v. Wilson, supra.

■ The specific question to be resolved in this case is whether the acts and conduct of plaintiff constituted part performance amounting to an acceptance of the offer and a sufficient consideration to make the offer irrevocable, or turn it into a bilateral contract. It has been held that in order to prove partial performance, it must be shown that there was an expenditure of time and money. Park v. Swartz, supra. On the other hand it has been held that a mere making of a local telephone call does not amount to a sufficient part performance so as to cause a unilateral offer to ripen into a binding contract. Strother v. Ryon, 239 S.W.2d 858 (Tex.Civ.App., Ft. Worth, 1951, n. w. h.). Practically all of the cases in other jurisdictions hold that the expenditure of time and effort is sufficient. 12 Am.Jur.2d Brokers, sec. 32. Also see 64 A.L.R. 404, 416–420. While most of the authorities on the subject deal with real estate brokerage contracts, we think the same legal principles are applicable here. We hold that the expenditure of time and effort is sufficient consideration to make a unilateral contract binding and irrevocable. It is undisputed that plaintiff expended at least some time and effort in attempting to obtain the loan prior to the time defendants rescinded the offer. For this reason we believe that under the foregoing authorities the unilateral offer in this instance ripened into a binding contract.

■ Having failed to establish a right of revocation or that the offer was rescinded prior to the time plaintiff expended time and effort to perform, defendants thereby breached their contract and became liable to plaintiff for such damages as he could prove were sustained by him, as a result of the breach. 12 Am.Jur.2d Brokers, sec. 64, p. 819. A summary judgment is proper only if the record establishes a right thereto as a matter of law. It follows, therefore, that since the record shows plaintiff had a cause of action for damages for breach of contract, defendants, as the moving parties, were not entitled to a summary judgment.

We turn now to the question of whether the plaintiff was entitled to a summary judgment as urged by him in his first point of error. We have concluded that he was not and that the action of the trial court in denying the plaintiff's motion for summary judgment must be sustained. While we believe that the summary judgment evidence was sufficient to establish a breach of contract, we are of the opinion that plaintiff failed to conclusively establish the amount of his damages, if

any, and therefore a fact question with regard to damages remains to be determined.

■■ In cases involving a breach of a brokerage contract, the courts generally support the principle that a broker whose employment or authority is wrongfully revoked may consider his contract of employment as rescinded and sue for damages, in which event he is entitled to have his recovery include the value of the services he has already rendered, his disbursements, and such prospective profits as he can establish would have been his but for such revocation; or he may refuse to consider his contract as rescinded, and if he proceeds and succeeds in performing that which his contract requires him to perform, his employer is liable for the agreed compensation. If, upon wrongful revocation, however, a loan broker considers his contract of employment revoked, and sues for damages for wrongful revocation without finding a lender, then he may recover only such damages as proximately result from the termination of the employment contract. 12 Am.Jur.2d Brokers, sec. 64.

In the case at bar, plaintiff urges he should be permitted to recover his 1% commission because he argues that he succeeded in fully performing the contract in that he obtained a loan in accordance with the contract which was refused by the defendants. Therefore, he insists as a matter of law he was entitled to the fee stipulated in the contract and was entitled to liquidated damages in the amount of $5,600.00.

■ As we view the record the proposed loan which plaintiff obtained from Oak Cliff Savings and Loan did not constitute full performance of the agreement because it did not constitute an unqualified agreement to make the loan on the terms proposed by defendants. In addition to the fact that the rate of interest on the loan proffered by plaintiff was greater than the rate stipulated by defendants, the lender also attached two additional conditions: (1) that the defendants would be personal-

ly liable and (2) that they would agree to pay a 1% initial lending fee to the lender. The proffered loan was thus conditioned and defendants had a right to accept it or not at their option. Hutchings v. Binford, 206 S.W. 557 (Tex.Civ.App., Amarillo, 1918, no writ). Since defendants refused to accept the conditional loan, plaintiff did not obtain a loan as contemplated by the agreement and therefore failed to perform the contract. 9 Tex.Jur.2d Brokers, sec. 50, p. 810: Keystone Mortgage Co. v. McDonald, 254 Cal.App.2d 808, 62 Cal. Rptr. 562 (1967). It follows that plaintiff would not be entitled to the fee stipulated in the contract.

Plaintiff presented no evidence showing that he probably could and would have performed the contract but for the revocation, nor did he present any evidence showing that he probably could and would have performed by showing that the contract was subsequently performed by defendants or their agents. The only evidence of damages presented by plaintiff was that he expended some time and effort before revocation. Such evidence does nothing more than raise a fact question of the issue of damages and consequently would not entitle plaintiff to a summary judgment.

■ Inasmuch as the case must be reversed for a new trial, we think it proper to discuss the measure of damages in the case. Since plaintiff failed to obtain a loan in accordance with the terms of the contract, and since he apparently made no attempt to find another lender after the revocation, his cause of action would be for damages rather than a suit on the contract. Therefore, his measure of recovery would be for the value of his services already rendered, if any; his disbursements and expenses, if any; and such prospective profits as he can establish that he would have earned but for the wrongful revocation. In connection with the loss of prospective profits, he can recover only to the extent that the evidence he produces af-

fords a sufficient basis for estimating with reasonable certainty the amount of profits prevented by the wrongful breach of the contract. Thus, if he can show that he could and would have probably obtained a loan in accordance with the contract, or if he can show that during the contract period, defendants or their agents actually obtained a loan as contemplated by the terms of the contract, such evidence would be sufficient to raise an issue of fact with respect to the loss of prospective profits. Restatement, Second, Agency, sec. 455, Comment (e); Alderson v. Houston, 154 Cal. 1, 96 P. 884 (1908); Park v. Swartz, supra. The case of Park v. Swartz, supra, involved a situation where the principal wrongfully revoked a real estate brokerage contract and subsequently sold the property through another agent. There, the trial court impliedly found that the plaintiff in that case could and would have sold the property but for the wrongful revocation and awarded the agent damages in the amount of the prospective loss of profits as stipulated in the contract. The court of civil appeals reversed the judgment but the Supreme Court affirmed the judgment of the trial court holding that since the evidence showed that the property was subsequently sold, that such evidence was sufficient to sustain the trial court's implied finding that the plaintiff could have probably performed the contract and that the plaintiff was entitled to recover prospective damages in the amount of the stipulated commission. The court went on to point out, however, that the defendant had a right to plead and prove that the plaintiff could not and would not have performed the contract.

Having determined that the record raises a material issue of fact as to the damages sustained by the plaintiff, we are of the opinion the trial court erred in granting defendants' motion for summary judgment.

For the reasons stated, the judgment is reversed and the cause is remanded.