IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 03-1050
════════════
 
Alex Sheshunoff Management 
Services, L.P., Petitioner,
 
v.
 
Kenneth Johnson and Strunk 
& Associates, L.P., Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Third District of 
Texas
════════════════════════════════════════════════════
 
 
Argued November 
10, 2004
 
 
Chief Justice Jefferson, joined by 
Justice O’Neill and Justice Medina, concurring. 
 
The Court’s 
holding permits an employer to enforce a non-compete covenant months or even 
years after the employee signed it, as long as the employer eventually fulfills 
its side of the bargain. That sort of delay is inconsistent with clear statutory 
language that the covenant must be enforceable “at the time the agreement is 
made.” While I agree with the Court that “at the time” does not require an 
instantaneous exchange of consideration, neither does the statute permit the 
employer’s promise to hang in the air, indefinitely, until it “becomes 
enforceable” by performance. Rather, consistent with Light and with the 
statute, I would hold that the employer’s exchange of consideration must occur 
within a reasonable time after the agreement is made. Because that condition was 
satisfied on this record, I concur in the judgment.
 
I
The Covenants Not to Compete Act
At common 
law, courts used four criteria to evaluate the reasonableness of a covenant not 
to compete. Hill v. Mobile Auto Trim, Inc., 725 S.W.2d 168, 170-71 (Tex. 
1987). The covenant had to be (a) necessary to protect a legitimate business 
interest of the promisee, (b) supported by consideration, (c) reasonable as to 
its time, territory, and activity limitations, and (d) not injurious to the 
public. Id. In Hill, we adopted the additional restriction that 
“covenants not to compete which are primarily designed to limit competition or 
restrain the right to engage in a common calling are not enforceable.” 
Id. at 172 (citations and quotations omitted). Our “common calling” rule 
proved difficult to define and apply. See DeSantis v. Wackenhut Corp., 
793 S.W.2d 670, 682-83 (Tex. 1990) (discussing cases). In 1989, the Legislature 
enacted the Covenants Not to Compete Act, which essentially codified the four 
criteria applied at common law. See Act of June 16, 1989, 71st Leg., 
R.S., ch. 1193, § 1, 1989 Tex. Gen. Laws 4852, 4852; Peat Marwick Main & 
Co. v. Haass, 818 S.W.2d 381, 388 (Tex. 1991) (noting that “the purpose of 
the Act was to return Texas’ law generally to the common-law as it existed prior 
to Hill”). As amended, the Act states that a covenant is enforceable if 
it is
 
ancillary 
to or part of an otherwise enforceable agreement at the time the agreement is 
made to the extent that it contains limitations as to time, geographical area, 
and scope of activity to be restrained that are reasonable and do not impose a 
greater restraint than is necessary to protect the goodwill or other business 
interest of the promisee.
 
Tex. Bus. & Com. Code § 
15.50(a).
 
The central 
issue in this case concerns the meaning and application 
of “ancillary to or part of an otherwise enforceable agreement at the time the 
agreement is made.” Id. Consistent with our interpretation in 
Light, it is helpful to view this text as incorporating the first two 
criteria from the common law. First, the covenant must protect a legitimate 
business interest that originates in the enforceable agreement. Second, the 
covenant must be supported by the consideration in the enforceable agreement. 

A
The “Ancillary” 
Relationship
 
Because a 
covenant not to compete is a restraint of trade, at common law the covenant was 
unenforceable as against public policy unless it arose from a “valid transaction 
or relationship,” such as “the purchase and sale of a business, and employment 
relationships.” Light v. Centel Cellular Co. of Tex., 883 S.W.2d 
642, 644 n.4 (Tex. 1994) (citing DeSantis, 793 S.W.2d at 681-82). The 
transaction or relationship had to create a legitimate interest worthy of 
protection, such as “business goodwill, trade secrets, and other confidential or 
proprietary information.” DeSantis, 793 S.W.2d at 682. Thus, for example, 
an agreement between two strangers in which a covenant not to compete was 
supported merely by a payment of money was unenforceable. See, e.g., Restatement (Second) of Contracts § 
187 cmt. b.
Following the 
common law, section 15.50(a) does not permit the covenant to stand alone. Hence, 
the covenant must be “ancillary to or part of” an enforceable agreement. Tex. Bus. & Com. Code § 15.50(a). 
In Light, we dissected the ancillary relationship with a two-part test.[1] The relationship is satisfied if the 
covenant arises within or alongside an agreement to transfer and safeguard a 
legitimate business interest. A confidentiality agreement is a model because its 
purpose is to provide the employee with confidential information in return for 
his promise not to disclose it.[2] If the covenant is ancillary to such 
an agreement, it is not a direct restraint of trade in violation of public 
policy because it protects a legitimate business interest. The agreement 
must, however, be supported by consideration.
B
Consideration
 
A promise not 
to compete, by itself, is not a contract. Like any other promise, it must be 
supported by consideration to be enforceable.[3] Consideration for a promise may be 
either a performance or a return promise bargained for in a present exchange. 
Roark v. Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 496 (Tex. 1991); 
Restatement (Second) of Contracts 
§ 71(1) (1981). Each party’s promise or performance serves as a 
reciprocal inducement to enter the agreement. Roark, 813 S.W.2d at 496; 
Oliver Wendell Holmes, Jr., The Common 
Law 293-94 (Little, Brown & Co. 1881); cf. Connell v. Provident 
Life & Accident Ins. Co., 224 S.W.2d 194, 196 (Tex. 1949) (discussing 
“the elemental principle of contract law that ‘nothing is a consideration that 
is not regarded as such by both parties’“) (quoting Fire Ins. Ass’n v. 
Wickham, 141 U.S. 564, 579 (1891)); Restatement (Second) of Contracts § 
71(2) (a performance or return promise is bargained for if it is “sought by the 
promisor in exchange for his promise and is given by the promisee in exchange 
for that promise”). It follows that “past consideration” is not consideration. 
See Light, 883 S.W.2d at 645 n.6; Roark, 813 S.W.2d at 496.
So that the 
covenant complies with these principles and is enforceable as a matter of 
contract law, section 15.50(a) requires the covenant to be supported by 
consideration in the “otherwise enforceable agreement.” The common law was 
familiar with this system of supplying consideration to the covenant:
 
An 
enforceable covenant not to compete must be ancillary to an otherwise valid 
contract whose primary purpose is unrelated to the suppression of competition 
between the parties. A covenant not to compete must be supported by valuable 
consideration. However, as long as there is an exchange of consideration to 
support the primary purpose of the agreement, the covenant not to compete is 
supported by that consideration.
 
Martin v. 
Credit Prot. Ass’n, Inc., 793 S.W.2d 667, 669 (Tex. 1990) (citations 
omitted); see also Justin Belt Co. v. Yost, 502 S.W.2d 681, 683-84 (Tex. 
1973). Thus, if the “otherwise enforceable agreement” is a confidentiality 
agreement, the promise (or performance) to provide confidential information must 
serve as consideration for the promise not to compete.[4] Because “past consideration” is not 
consideration, the statute requires the covenant to be “ancillary to or part of 
an otherwise enforceable agreement at the time the agreement is made . . 
. .” Tex. Bus. & Com. Code § 
15.50(a) (emphasis added). Accordingly, the covenant and the enforceable 
agreement must be formed together as part of one transaction.
In sum, 
section 15.50(a) seeks to enforce reasonable covenants that protect legitimate 
business interests and are supported by valid consideration. These two criteria 
are interlaced because, for purposes of the statute, valid consideration is a 
promise (or performance) to transfer or share the legitimate business interest, 
be it trade secrets, specialized training, goodwill, or other confidential and 
proprietary information. A covenant satisfying the statute is part of a 
transaction that benefits both parties. In the employment setting, these 
benefits include, for example, more efficient operations through freedom of 
communication within an organization, and greater investment in the improvement 
of business methods and technologies. Harlan M. Blake, Employee Agreements 
Not to Compete, 73 Harv. L. 
Rev. 625, 627 (1960). In addition, the special knowledge and skills 
acquired by the employee increase his value and compensation. Hill v. Mobile 
Auto Trim, Inc., 725 S.W.2d 168, 171 (Tex. 1987); see also Jeffrey T. 
Rickman, Noncompete Clauses in Georgia: An Economic Analysis, 21 Ga. St. U. L. Rev. 1107, 1120-21 
(2005). The covenant, in turn, ensures that the costs incurred to develop human 
capital are protected against competitors who, having not made such 
expenditures, might offer higher salaries to employees and thereby appropriate 
the employer’s investment. Greg T. Lembrich, Garden Leave: A Possible 
Solution to the Uncertain Enforceability of Restrictive Employment 
Covenants, 102 Colum. L. Rev. 
2291, 2296 (2002).
C
At-Will 
Employment
 
The 
covenant’s dependency on the consideration in an “otherwise enforceable 
agreement” presents problems in the at-will employment context because any 
promise whose performance requires continued employment is illusory. 
Light, 883 S.W.2d at 645; see also J.M. Davidson, Inc. v. 
Webster, 128 S.W.3d 223, 228 (Tex. 2003). Generally, a promise is illusory 
if it does not commit the promisor to perform. See Restatement (Second) of Contracts § 77 
cmt. a; 3 Samuel Williston & Richard 
A. Lord, A Treatise on the Law of Contracts § 7.7 (4th ed. 1992). At-will 
employment renders many promises illusory because the promisor effectively 
“retains the option of discontinuing employment in lieu of performance.” 
Light, 883 S.W.2d at 645 & n.5 (discussing the example of an 
employer’s promise to raise wages). Because an illusory promise does not 
constitute consideration, an agreement based on an illusory promise is not an 
“otherwise enforceable agreement.” See id., 883 S.W.2d at 645 n.6; 
Restatement (Second) of Contracts 
§ 77 cmt. a; 3 Williston on 
Contracts § 7.7.
I agree with 
the Court that an agreement based on an illusory promise may become enforceable 
as a unilateral contract when the promisor performs. Light, 883 S.W.2d at 
645 n.6 (explaining that the employee’s promise is treated as an offer, which 
the employer accepts by performance, creating a binding unilateral contract); 
United Concrete Pipe Corp. v. Spin-Line Co., 430 S.W.2d 360, 364 (Tex. 
1968) (assignee of pipeline construction contract performed terms of assignment 
agreement, rendering promissory note enforceable); 3 Williston on Contracts § 7:15. Part 
performance is sufficient to render the entire agreement enforceable. 
Hutchings v. Slemons, 174 S.W.2d 487, 489 (Tex. 1943); see also 
O’Farrill Avila v. Gonzalez, 974 S.W.2d 237, 244 (Tex. App.–San Antonio 
1998, pet. denied); Sunshine v. Manos, 496 S.W.2d 195, 198 (Tex. Civ. 
App.–Tyler 1973, writ ref’d n.r.e.); Restatement (Second) of Contracts §§ 
32, 50, 62. However, while a unilateral contract is an “otherwise enforceable 
agreement,” the performance that creates it does not supply consideration to a 
covenant, nor satisfy section 15.50(a), unless the unilateral contract and the 
covenant are formed together as part of one transaction. See Tex. Bus. & Com. Code § 15.50(a). 
For example, in a confidentiality agreement, the employer must provide the 
confidential information in exchange for the employee’s promises not to disclose 
and not to compete. Light, 883 S.W.2d at 645 n.6. While this exchange 
need not be contemporaneous, it must occur within a reasonable time so that the 
employer’s performance and the employee’s promises are bargained for and 
constitute reciprocal inducements. Cf. Montgomery County Hosp. Dist. v. 
Brown, 965 S.W.2d 501, 504 (Tex. 1998) (Gonzalez, J., concurring) ("When the 
parties omit an express stipulation as to time, it is in accord with human 
experience and accepted standards of law for us to assume they meant whatever 
term . . . might be reasonable in the light of the circumstances before them at 
the date of the contract.") (quoting Hall v. Hall, 308 S.W.2d 12, 16 
(1957)); Gulf Oil Corp. v. Reid, 337 S.W.2d 267, 275 (Tex. 1960) (“Where 
no time is fixed for performance of any phase of a contract, the law necessarily 
will imply that it is to be performed within a reasonable time. That which is 
implied in a written contract is as much a part of it as though it were 
expressed therein."); see also U.C.C. § 2-309(1) (2003); Restatement (Second) of Contracts § 
231 cmt. b. If the employer’s performance is not part of the same transaction, 
but instead comes months or years later, the resulting unilateral contract does 
not satisfy the statute because it was not an “otherwise enforceable agreement” 
when the parties formed the covenant. Light, 883 S.W.2d at 645 n.6.; 
Tex. Bus. & Com. Code § 
15.50(a); see, e.g., TMC Worldwide, L.P. v. Gray, 178 S.W.3d 29, 
38-39 (Tex. App.–Houston [1st Dist.] 2005, no pet.) (holding covenant not to 
compete unenforceable because at-will marketing consultant received customer 
lists one year after signing employment agreement).
II
Response to the 
Court
 
Undeterred by 
a contrary pronouncement in Light, the Court holds that the phrase “at 
the time the agreement is made” modifies not “otherwise enforceable agreement,” 
which directly precedes it, but “ancillary to or part of.” A plain reading of 
the statute, however, establishes that the phrase “at the time the agreement is 
made” either refers solely to “otherwise enforceable agreement” or to both 
“otherwise enforceable agreement” and “ancillary to or part of” — but in no 
event to “ancillary to or part of” alone. Under the Court’s reasoning, however, 
an employer’s illusory promise satisfies the Act’s requirements as long as the 
employer opts to perform at some indefinite time in the future. There are two 
problems with this approach: First, it is contradicted by the Act’s grammatical 
structure. See Spradlin v. Jim Walter Homes, Inc., 34 S.W.3d 578, 580‑81 
(Tex. 2000) (stating that, under the doctrine of last antecedent, “a qualifying 
phrase in a statute or the Constitution must be confined to the words and 
phrases immediately preceding it to which it may, without impairing the meaning 
of the sentence, be applied"). Second, and more importantly, it would permit an 
employer’s illusory promise to bind its employee to the covenant even if, at the 
time the covenant is signed, the employer never intended to perform, and even 
when the employer’s performance is deferred so long that one cannot say the 
enforceable agreement and covenant are part of the same transaction. 
After today, 
an employer may easily refrain from sharing trade secrets or other specialized 
technical knowledge with an employee for a substantial period of time after the 
covenant is signed, only to quickly perform once the employee indicates an 
intention to leave his current job for the employer’s competitor. See 
Light, 883 S.W.2d at 645 & n.5 (discussing the example of an employer’s 
promise to raise wages). Thus, an employer may now legitimately restrain trade 
merely by performing a previously illusory promise, thereby converting an 
unenforceable unilateral contract into a binding commitment at the last minute. 
We should not encourage such one-sided gamesmanship. If the employer’s 
performance is not part of the same transaction but instead comes much later in 
time, the resulting unilateral contract does not satisfy the Act’s requirements 
because it was not “an otherwise enforceable agreement” when the parties formed 
the covenant. Tex. Bus. & Com. Code 
§ 15.50(a); Light, 883 S.W.2d at 645 n. 6; see, 
e.g., TMC Worldwide, L.P. v. Gray, 178 S.W.3d 29, 38-39 (Tex. 
App.–Houston [1st Dist.] 2005, no pet.)(holding covenant not to compete 
unenforceable because at-will marketing consultant received customer lists one 
year after signing employment agreement). I would hold that "at the time" 
requires both that the employer’s promise be tied to the covenant as part of the 
same transaction, and that the employer tender consideration within a reasonable 
time after the covenant is signed. 
In a 
footnote, the Court says that only an irrational employer would trigger the 
covenant as a means of subverting an employee’s subsequent mobility in the 
marketplace. ___ S.W.3d ___. The Court underestimates the competitive nature of 
business. But the point is larger than that. Under the Court’s interpretation, 
the employer need not even intend to perform its side of the bargain when it 
compels the employee to sign covenant. If the employer has no incentive to 
perform, these covenants—once viewed as impermissible restraints on trade—will 
become not only ubiquitous in at‑will employment contracts, but enforceable at 
the employer’s whim. Because the Court would not require the employer to prove 
an intent to fulfill its side of the bargain (an intent that would be implicit 
if the employer had to perform within a reasonable time), the employee is 
potentially left with none of the benefits typically conferred by an exchange of 
consideration. See DeSantis 793 S.W.2d at 682 (holding that covenant can 
permissibly accomplish a "salutary purpose" that encourages "an employer to 
share confidential, proprietary information with an employee in furtherance of 
their common purpose," but may not "take unfair advantage" of its employee, 
thereby impairing the "employee’s personal freedom and economic mobility”). 
Moreover, the circumstances behind the covenant’s formation are not, as the 
Court suggests, subject to equitable review. Nor should they be if, as the Court 
holds, the contract is enforceable as a covenant the moment it is signed. By 
statute a court in equity reviews not the covenant’s formation, but its 
reasonableness in respect to time, geographical area, and scope of 
activity. Tex. Bus. & Com. Code 
§ 15.50(a). 
III
Johnson’s Covenant 
Not to Compete
 
In January 
1998, the parties signed an employment agreement containing a confidentiality 
agreement and a covenant not to compete. In the confidentiality agreement, ASM 
promised “special training regarding [its] business methods and access to 
certain confidential and proprietary information” in exchange for Johnson’s 
promise “to keep the Confidential Information, and all documentation, access and 
information relating thereto, strictly confidential.” Johnson’s covenant 
satisfies section 15.50(a)’s ancillary relationship requirement because it 
reinforces the parties’ agreement to share and protect ASM’s confidential and 
proprietary information. See Light, 883 S.W.2d at 647 & n.14.
Johnson’s 
covenant also satisfies the statute’s consideration requirement. In September 
1997, four months before signing the employment agreement, Johnson was promoted 
to Director of ASM’s Affiliation Program. In this position, ASM provided Johnson 
with daily access to confidential information about the company’s finances, 
strategies, client lists, marketing assessments, product development, pricing, 
sales projections, and client feedback. Much of this information was made 
available on an electronic database, which continuously updated the information. 
When Johnson signed the covenant, and during the next four years, ASM provided 
such access on a daily basis.[5] Although ASM’s promise to provide the 
access was initially illusory, ASM’s contemporaneous performance created an 
enforceable unilateral contract. For example, Johnson became a member of ASM’s 
senior management team, affording him the opportunity to interact directly with 
numerous chief executive officers and senior bank executives the moment he 
signed the agreement. ASM’s performance thus supplied valid consideration for 
Johnson’s covenant not to compete. Light, 883 S.W.2d at 645 n.6; 
United Concrete, 430 S.W.2d at 364. Johnson’s covenant was therefore 
ancillary to an otherwise enforceable agreement at the time the agreement was 
made, as section 15.50(a) requires.
IV
Conclusion
 
Based on the 
record in this case, I agree with the Court’s judgment that Johnson’s employment 
agreement is enforceable. I disagree with the Court’s analysis, however, and 
thus concur only in the judgment.
 
___________________________________
Wallace B. 
Jefferson 
Chief Justice 

 
OPINION DELIVERED: October 20, 
2006
 
 






[1] We stated that (1) the consideration given by the 
employer in the enforceable agreement must give rise to its interest in 
restraining the employee from competing, and (2) the covenant must be designed 
to enforce the consideration given by the employee in the enforceable agreement. 
Light, 883 S.W.2d at 647.

[2] As we explained in Light, the provision of 
confidential information gives rise to the employer’s interest in restraining 
the employee from competing, and a covenant not to compete is designed to 
enforce the employee’s promise not to disclose the information. Light, 
883 S.W.2d at 647 n.14.

[3] There are, of course, traditional exceptions to this 
general rule. See, e.g., 1464-Eight, Ltd. v. Joppich, 154 S.W.3d 
101, 109-10 (Tex. 2004) (failure to pay recited nominal consideration does not 
preclude enforcement of option contract); Restatement (Second) of Contracts §§ 
82-94 (1981) (discussing promissory estoppel, promises to pay debts discharged 
in bankruptcy, and other examples).

[4] The employer’s promise or performance in the “otherwise 
enforceable agreement” can furnish consideration for promises given by the 
employee in both the agreement and the covenant. See Birdwell v. 
Birdwell, 819 S.W.2d 223, 228 (Tex. App.–Fort Worth 1991, writ denied) (“A 
single consideration is sufficient to support multiple promises bargained for in 
an agreement.”); Mitchell v. Lawson, 444 S.W.2d 192, 196 (Tex. Civ. 
App.–San Antonio 1969, no writ) (where two instruments are executed as part of 
the same transaction, the consideration given in one may support collateral 
promises made in the other); see also Restatement (Second) of Contracts § 80 
cmt. a (a single performance or return promise may furnish consideration for 
multiple promises).

[5] Both Johnson and ASM’s CEO, Gabrielle Sheshunoff, 
testified that he experienced “no change” in his access to confidential 
information as a result of signing the covenant. Johnson’s briefs to this Court 
confirm that the covenant “resulted in absolutely no change in his job duties, 
responsibilities, or access to information—confidential or otherwise—within 
ASM.”