**DANAHO REFINING COMPANY,**
Appellant,

v.

**Clifton E. DIETZ et al., Appellees.**

No. 141.

Court of Civil Appeals of Texas.

Corpus Christi.

Dec. 30, 1965.

Rehearing Denied Jan. 27, 1966.

Billy E. Lee, Houston, for appellant.

Robert D. Nogueira, Beeville, for appellees.

GREEN, Chief Justice.

Six plaintiffs, all former employees of appellant Danaho Refining Company, joined in one petition to bring suit for breach of a contract alleged to have been made in the latter part of 1952 between appellant and its employees at its plant near Beeville, Texas, to pay annually as a part of their salary or wages a Christmas bonus equal to one month's salary. It was plaintiffs' contention that this contract remained a binding legal obligation of defendant for the entire period of their employment, which terminated as to each in 1962, when defendant closed its plant in Bee County, and discharged its employees. After a trial without a jury, the court upheld plaintiffs' contentions, and rendered judgment whereby each plaintiff recovered an amount equal to one month's salary for each of the years 1960 and 1961, the trial court impliedly finding that recovery for prior years was barred by the two years statute of limitation. The judgment also provided for reasonable attorney fees, which the court set at 20% of the recovery. Appellant has appealed from such judgment. The opinion of this court on the venue question is reported in 378 S.W.2d 412.

Appellant's brief presents four points of error. The first two, which will be con-

sidered together, as they were in the briefs of appellant and appellee, are as follows:

## "POINT OF ERROR NO. 1

The trial court erred in its implied finding that the parties entered into a contract in 1952 binding appellant for all material subsequent years, such implied finding being against the overwhelming weight of the evidence.

## POINT OF ERROR NO. 2

The trial court erred in its implied finding that the periodic pay raises awarded to appellees after 1956 did not supersede the original contract regarding the payment of a Christmas bonus."

Appellees, plaintiffs below, opened the testimony by reading from the oral deposition of J. F. Thomson, General Superintendent of appellant's plant during all of the times here material. According to his testimony, he did appellant's hiring and firing. In 1952, a general employees meeting was had, over which Thomson presided. The workers were asking for an increase in wages. While Thomson was driving Mr. Hovey, appellant's president, to the airfield near Beeville the previous day, he told Hovey of the employees' demands, and Hovey told him to offer them an increase of ten cents an hour, or a Christmas bonus equal to one month's salary. As stated by Thomson, "as far as I can remember, when we called that meeting it was to decide whether to accept a ten cent raise or a bonus." The employees chose the bonus of a month's pay at Christmas. Thomson communicated this decision to Hovey, who gave his approval of the arrangement.

Not all of the employees at the plant attended the meeting, since some were actually at work on their job at the time. However, Thomson stated that the salary bonus arrangement covered all of the employees at the plant, and also included those who came to work there after the

meeting took place. As to the latter class of employees Thomson testified:

"'QUESTION: And those employees were told by you when you hired them that they would get a bonus at Christmas time in lieu of the ten cents an hour that the employees had wanted, is that correct?

"'ANSWER: I told the boys during the—in the office at that time they weren't all there, but as far as I am concerned, yes that is correct.'"

Marvin Voss, a witness for appellees, testified that he was present at the 1952 meeting, and that the employees, being given the choice by Thomson of the ten cents raise and a two week bonus, both when added together being equivalent to a month's salary, or a bonus of a month's wages at Christmas, chose the bonus. He testified further:

"Q All right. And did you gentlemen accept that then?

A Yes, sir.

Q The month's pay?

A (Up and down nod.)

Q Now, did Mr. Thomson tell you that that was just for that year, or two years—

A No.

Q What was the consensus there?

A Well, it was brought up that supposing they would quit paying that, and he said they couldn't because that was your wages.

Q Well, was it to be a continuing thing from year to year?

A The way we understood it, it would be.

Q Now, did Mr. Thomson say, 'Now, wait a minute, gentlemen, this is just for this year, 1952'?

A No, sir.

Q  Did he say it was just for '52 or '53?

A  No, sir.

Q  Did he just say it was for '52, '53, '54, or for any other set period of time?

A  No, sir.

Q  But that it was to continue?

A  Yes, sir.

Q  All right.  And you were at this meeting?

A  Yes, sir.

Q  And participated in these negotiations?

A  Yes, sir.

Q  And you heard Mr. Thomson's deposition read this morning when I read it, didn't you?

A  Yes, sir.

Q  And you heard his testimony that this applied to all the employees in the plant; is that correct?

A  That's correct."

Four of appellees, Schley, Wehe, Aguirre, and Gonzales, were in appellant's employment at the time of the meeting, and each continued in such employment until 1962. Appellee Dietz went to work for appellant at its Bee County plant in April, 1954, as chief chemist, and continued in its employ until October 15, 1962.  He was employed by a Mr. Sives, who acted as appellant's superintendent during a short interval while Thomson was supervising some construction at the plant.  Appellee Hagemann was first employed in November, 1953, left the employment for a few months in 1954, was re-employed early in 1955, and continued to work for appellant until 1962. Dietz testified that when he was employed, as an inducement for him to take the job, which he was reluctant to take at the salary offered, Sives, in explaining the fringe benefits explained about the Christ-

mas bonus · of a month's salary, and that Dietz "understood that you were to receive one month's salary at Christmas time each year, is that true?"  A.  "yes, sir."

The bonus was paid to the employees in December, 1952, and 1953.  It was not paid in 1954, but a letter was received by each of the six plaintiffs signed by Hovey, appellant's president, written on company letterhead, dated December 21, 1954, reading as follows:

"Due to conditions beyond our control, we will be unable to pay the Christmas bonus at this time.

I feel sure that you all know that for the last six months we have been operating the refinery at a loss.  This condition was brought about by the loss of our jet fuel and aviation gasoline contracts and general depressed market conditions.

The future, however, looks bright. We will have our platform unit on stream in the very near future and we were awarded a contract for a substantial amount of aviation gasoline over the first six months of next year which will enable us to operate the refinery at near capacity with a profitable operation.

I realize that this bonus is a direct obligation of your company and is so shown on our books and want to assure you that it will be paid as early next year as practical to do so.

Trusting that you understand the situation and best wishes for the holiday season and a prosperous New Year, I am

Yours very truly,

s/  D. W. Hovey
D. W. Hovey"

Notwithstanding the statements in the letter this bonus was never paid.

Another letter written on company letterhead signed by Mr. Hovey dated December

21, 1955, was received by each appellee as well as the other employees around Christmas of that year, in which the writer after mentioning certain heavy expenses incurred by the company during 1955 wrote:

"* * * Our Directors regret very much our inability to make full payment of the Christmas bonus at this time. However, we are pleased to make a partial payment of one-half the regular yearly bonus at this time as covered by the enclosed check.

We all are grateful for your loyal support during this difficult year and on behalf of our Directors I want to extend to you and yours our best wishes for Christmas and the New Year."

Each 1955 letter was accompanied by a check for one-half month's wages.

No other payment of bonus money was ever made to any of appellees by appellant.

In 1956, another meeting of representatives of appellant's employees was held at the plant, this one being presided over by appellant's president Hovey. This meeting was called to discuss a petition signed by appellant's employees asking for a twenty-five cents an hour pay raise. As a result of such meeting, appellant granted a blanket raise of 5% to all employees, including appellees, to begin January 1, 1957, and an additional raise in June, 1957. No mention of the agreement concerning the bonus was made at this meeting, and nothing was said about it either then or at any later time by any of appellees or by any representative of appellant. Each of the six appellees testified that at no time did any one representing appellant state that the bonus agreement had been revoked, or would no longer be paid. Appellee Hagemann stated that when he was employed, "I just taken it (the payment of the bonus) as a part of the company's deal." Appellee Wehe testified that a sign remained on the company bulletin board for years after 1952 stating that in lieu of the ten cent an hour raise, the employees would receive a bonus at Christ-

mas time. Mr. Hovey, testifying for appellant, stated that he had approved the agreement made in the 1952 meeting. He did not testify that there was a time limit placed upon the years during which the bonus would be paid, or that the subsequent raises superseded the bonus.

No findings of fact or conclusions of law were requested, or filed by the court. The trial court's judgment, therefore, implies all fact findings necessary in its support. Commercial Standard Insurance Co. v. Merit Clothing Co., Tex.Sup.Ct., 377 S.W.2d 179. In determining whether the evidence is sufficient factually to support such implied findings, we have considered all of the evidence contained in the record. Garza v. Alviar, Tex.Sup.Ct., 1965, 395 S.W.2d 821.

The construction placed upon an agreement by the parties to it, as shown by their words and conduct, may properly be considered by the trial court as evidence of the true intent and purpose of the parties in entering into such agreement. Henshaw v. Texas Natural Resources Foundation, 147 Tex. 436, 216 S.W.2d 566; Anchor Casualty Company v. Robertson Transport Company, Tex.Civ.App., 389 S.W.2d 135, writ ref. n. r. e.; Col-Tex. Refining Co. v. Coffield & Guthrie, Inc., Tex.Civ.App., 264 S.W.2d 462, writ ref. The letters written by appellant's president to each of the employees, including each plaintiff, on December 21, 1954, and December 21, 1955 were evidence that appellant considered itself under legal obligation, or contract, two and three years after the meeting of 1952 to pay the monthly Christmas bonus annually. All of the plaintiffs, according to the evidence, construed the agreement in the same manner. Although appellant could, by giving notice of its intention, have cancelled the agreement at will, Kennedy v. McMullen, Tex.Civ.App., 39 S.W.2d 168, 174, writ. ref., the evidence shows and the trial court impliedly found that he gave no such notice.

██ The fact that appellant did not pay the money from 1956 to 1961 inclusive, and that appellees remained on the job without complaint during that time, while evidence to be considered by the trial court on the question whether the parties intended that pay raises during those years superseded the original contract, as contended by appellant's second point, is not conclusive. We have already, in summarizing testimony of witnesses, shown that nothing was stated or testified to by any of the parties regarding any reference to any connection between the bonus and the pay raises of 1956 and 1957. The trial court's implied findings that there was no connection, and that there was a contract to pay the annual bonus and that it was not superseded by the subsequent wage increase, but remained in effect throughout the years of appellees' employment, were based on evidence sufficient factually and legally to support such findings.

Appellant's points one and two are overruled.

Appellant's fourth point is that the trial court erred in holding that the claims of appellee were not wholly barred by limitations.

██ Appellant's pleading in the trial court consisted as his factual pleas only of a general denial and a plea of the two year statute of limitation. The date of the filing of plaintiffs' original petition is not shown, so far as we could discover, in the transcript, but from an undisputed statement in appellant's brief, we conclude that it was filed in December, 1962. Since the trial court granted judgment only for the sums becoming due in December 1960 and December 1961, it is clear that he sustained the two year plea of limitations and found that claims for prior years were barred. No error is shown in the holding that the 1960 and 1961 claims were not barred.

██ Appellant by his statement and argument under this point attempts to raise for the first time so far as the record indicates the defense that the contract of 1952 could not have been performed within one year, and that as an oral contract it contravened the statute of frauds; and also that enforcement of such contract was barred by the principles of laches and state demand. Since appellant did not plead such defenses, or seek to raise them in the trial court by objections to pertinent evidence on any of these grounds, it is too late to attempt to raise such grounds of defense for the first time in the appellate court. Rule 94, Texas Rules of Civil Procedure; Edwards v. Strong, 147 Tex. 155, 213 S.W.2d 979; Cook v. Hamer, 158 Tex. 164, 309 S.W.2d 54; Gulf, Colorado & Santa Fe Railway Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492; Culver v. Pickens, Tex.Com. App., 142 Tex. 87, 176 S.W.2d 167.

Appellant's fourth point is overruled.

██ Appellant's contention that the trial court erred in awarding attorney fees to appellees, as raised in its 3rd point, is not well founded. Appellant argues that the suit is based on a special contract, and that where a cause of action is based upon a special contract, all provisions for its enforcement, including attorney fees, must be spelled out in the contract, and that Art. 2226, Vernon's Ann.Tex.Civ.St., is not applicable. Appellees' petition and the evidence show that the cause of action though based on contract was for labor done and services rendered. No contention is made by appellant that the necessary demand for payment was not timely made by appellees before suit was filed. The trial court was justified in awarding attorney fees as authorized by Art. 2226, V.A.T.S. Huff v. Fidelity Union Life Insurance Company, 158 Tex. 433, 312 S.W.2d 493; Williams v. Milliger, Tex.Civ.App., 352 S.W.2d 794; writ ref. n. r. e.; Dueitt v. Barrow, Tex. Civ.App., 384 S.W.2d 214.

Appellant's third point of error is overruled.

Judgment affirmed.