Ed VANEGAS, Jimmy D. Halman, Sam Armstrong, Alex Carbajal, Roger Farrington, Curtis Huff, and Tito Betancur, Appellants,

v.

AMERICAN ENERGY SERVICES, Niewoehner Partnership, L.P., RCH/HSJ/CCM/MCP I, L.P., Autry Stephens, John Carnett, Brack Blackwood, and Dennie Martin, Appellees.

No. 11–06–00118–CV.

Court of Appeals of Texas, Eastland.

May 10, 2007.

Allen R. Stroder, Odessa, for appellants.

B. Blue Hyatt, Scott M. Kidwell, Steven C. Kiser, Lynch, Chappell & Alsup, P.C., C.H. (Hal) Brockett Jr., Brockett & McNeel, LLP, Midland, Randal Patterson, Hollmann, Lyon, Patterson & Durell, Inc., Odessa, for appellees.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

Ed Vanegas, Jimmy D. Halman, Sam Armstrong, Alex Carbajal, Roger Farrington, Curtis Huff, and Tito Betancur (appellants) brought this action against American Energy Services (AES) and its former

shareholders, Niewoehner Partnership, L.P., RCH/HSJ/CCM/MCP I, L.P., Autry Stephens, John Carnett, Brack Blackwood, and Dennie Martin (appellees). Appellants were at-will employees of AES. Appellants alleged that AES breached an agreement to pay them 5% of the proceeds received in the event of a sale or merger of AES. Appellees filed motions for summary judgment asserting that AES's alleged promise to pay appellants 5% of the proceeds in the event of a sale or merger was illusory because it depended on the continued employment of at-will employees. Based on the premise that AES's alleged promise was illusory, appellees moved for summary judgment on the ground that no enforceable contract existed. The trial court granted appellees' motions for summary judgment. We affirm. AES's alleged promise was illusory. Performance of an act called for in an illusory promise cannot create a binding unilateral contract.

## Background

AES went into business in 1996. Appellants alleged in their petition that they were hired by AES in 1996. The record shows that appellants were at-will employees of AES. Appellants alleged that, in 1997, AES, by and through its authorized agent or agents, made the following promise to them: "[I]n the event of sale or merger of [AES], [appellants] would receive 5% of the value received for such shares or sale of assets." Appellants also alleged that AES made the promise as an inducement for them to continue employment with AES. Appellants further alleged that, after AES merged with AES Acquisition, Inc. in 2001, AES failed to pay them any proceeds from the merger. Therefore, appellants claimed that AES breached its agreement to pay them 5% of the proceeds from any sale or merger.

Appellants sought to recover damages from appellee AES under a breach of contract theory. Appellants alleged that the appellee shareholders were individually liable for the damages because the shareholders had "effectively denuded the corporation of assets."

Appellees filed traditional motions for summary judgment asserting that AES's alleged agreement was unenforceable for two reasons. First, appellees asserted that, because AES's alleged promise to appellants depended on the continued employment of appellants, who were at-will employees, the alleged promise was illusory and did not provide the consideration necessary for a binding contract. Second, appellees asserted that the alleged agreement failed to comply with the statute of frauds.

In response, appellants asserted that a binding unilateral contract existed. Appellants argued that their performance of the action requested by AES in its promise—appellants' continued employment with AES until the merger in 2001—supplied the consideration necessary to support AES's promise to pay them 5% of the proceeds from any sale or merger. Thus, appellants asserted that appellees' "arguably illusory promise was accepted by [their] performance and became enforceable as a unilateral contract." Appellants also argued that the alleged agreement did not violate the statute of frauds because it could have been performed within one year.

The trial court granted summary judgment to appellees. The trial court did not specify the ground or grounds relied on for its ruling.

## Issues Presented

Appellants present two issues for review. In their first issue, appellants assert that the trial court erred in granting sum-

mary judgment because they accepted AES's promise of a 5% incentive bonus by performance, thereby creating a binding unilateral contract. In their second issue, appellants assert that the trial court erred in granting summary judgment because the agreement was not subject to the statute of frauds.

### Standard of Review

This case involves the review of traditional motions for summary judgment. We will apply the well-recognized standard of review for traditional summary judgments. We must consider the summary judgment evidence in the light most favorable to the nonmovant, indulging all reasonable inferences in favor of the nonmovant, and determine whether the movant proved there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546 (Tex.1985); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex.1979). Where, as in this case, a trial court's order granting summary judgment does not specify the ground or grounds relied upon for its ruling, summary judgment will be affirmed on appeal if any of the summary judgment grounds advanced by the movant are meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

### The Summary Judgment Record

Appellants described the alleged agreement as follows in their answers to interrogatories: "[T]he original employees who were still employed would get 5% of the value [when AES was] sold or merged." Appellants stated in their answers to interrogatories that appellee Carnett made the alleged promise to them and that appellees Niewoehner, Blackwood, and Martin were present when Carnett made the alleged promise.

Appellees presented an affidavit from appellee Carnett in support of their motions for summary judgment. Carnett stated that he was the vice president of AES in 1996 and 1997. He also stated that he never promised or represented to any of the appellants that, in the event of a sale or merger of AES, appellants would receive 5% of the value received for such sale or assets. Carnett further stated that he had knowledge of appellants' personnel records, that appellants were not subject to employment contracts or agreements during their employment with AES, and that appellants were employees at-will during their employment with AES.

Appellees also presented deposition testimony of appellee Niewoehner in support of their motions for summary judgment. Niewoehner testified that he was not present when appellee Carnett made any agreement or promise that, in the event of a merger or sale of AES, the original employees of AES would receive a percentage of the value of the sale or merger.

Appellee Stephens and appellee RCH/HSJ/CCM/MCP I, L.P. presented an affidavit from appellee Stephens in support of their motions for summary judgment. Stephens stated that he never promised or represented to any of the appellants that, in the event of a sale or merger of AES, appellants would receive 5% of the value received for such sale or assets.

Appellants presented an affidavit from appellant Farrington in response to appellees' motions for summary judgment. Farrington stated that AES was started in the summer of 1996 and that he went to work for AES on or about December 1, 1996. Farrington also stated that he "was promised additional compensation in the form of a percentage of the proceeds of any sale or merger in the event that AES

was sold or merged." He further stated that, when he started work at AES, the employees used antiquated equipment and worked long hours. Farrington stated that the employees were concerned about the continued survival of AES, that the employees had been through sales or mergers while working for other companies, and that the employees expressed their concerns to management, including appellees Carnett, Niewoehner, Martin, and Blackwood, at an operational meeting in June 1997. Farrington also stated that, at the June 1997 meeting, appellee Carnett "promised as an incentive for [appellants'] continued employment and hard work for AES, that in the event of sale or merger of AES, the original employees remaining with AES at that time would get 5% of the value of any sale or merger of AES." Farrington further stated that all appellants attended the June 1997 meeting and that all appellants were still employed by AES at the time of the merger.

### Analysis

Applying the above standard of review, we accept as true appellant's summary judgment evidence that, at the June 1997 meeting, Carnett promised appellants that, "in the event of sale or merger of AES, the original employees remaining with AES at that time would get 5% of the value of any sale or merger of AES." We attribute Carnett's promise to AES for the purposes of our review. We also accept as true Farrington's statement that all appellants attended the June 1997 meeting and that they were still employed by AES at the time of the merger.

■ A party pursuing a breach of contract claim must prove that a valid contract existed. *See Valero Mktg. & Supply Co. v. Kalama Int'l,* 51 S.W.3d 345, 351 (Tex.App.-Houston [1st Dist.] 2001, no pet.); *Aquila Sw. Pipeline, Inc. v. Harmo-*

*ny Exploration, Inc.,* 48 S.W.3d 225, 235 (Tex.App.-San Antonio 2001, pet. denied). In their first issue, appellants assert that a valid unilateral contract existed because AES's promise constituted an offer of an incentive bonus (if you stay here and there is a sale or merger, you will receive a 5% payment) that they accepted by performance (their continued employment until the time of the merger). Appellees assert that the promise could not serve as an offer for a unilateral contract because any such promise was illusory and that, therefore, there was no enforceable contract. Thus, we must determine whether AES's promise was illusory and, if so, whether appellants could make the promise enforceable by performance.

■ To analyze appellants' claim that a binding unilateral contract existed, we first address the distinction between bilateral contracts and unilateral contracts. A bilateral contract is one in which there are mutual promises between two parties to the contract, each being both a promisor and a promisee. *Hutchings v. Slemons,* 141 Tex. 448, 174 S.W.2d 487, 489 (1943). A bilateral contract must be based upon a valid consideration, in other words, mutuality of obligation. *Light v. Centel Cellular Co. of Tex.,* 883 S.W.2d 642, 645 (Tex. 1994), *modified by Alex Sheshunoff Mgmt. Servs. v. Johnson,* 209 S.W.3d 644 (Tex. 2006); *Iacono v. Lyons,* 16 S.W.3d 92, 94 (Tex.App.-Houston [1st Dist.] 2000, no pet.). Consideration is a bargained-for exchange of promises. *Iacono,* 16 S.W.3d at 94. An illusory promise of performance invalidates a bilateral contract. *Light,* 883 S.W.2d at 645. A promise is illusory when it fails to bind the promisor who retains the option of discontinuing performance. *Id.* In fact, an illusory promise is no promise at all. *See* 1 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 1.17 (rev.1993). Because an illusory promise fails to bind

the promisor, it provides no consideration for a contract. *Light,* 883 S.W.2d at 644–45.

▬▬▬ A unilateral contract has only one promisor. *Dodson v. Stevens Transp.,* 776 S.W.2d 800, 805 (Tex.App.-Dallas 1989, no writ). The promisee commits himself to nothing. *Id.* Thus, mutuality of obligation is not essential for the formation of a unilateral contract. *Pace Corp. v. Jackson,* 155 Tex. 179, 284 S.W.2d 340, 344 (1955); *Johnson v. Breckenridge–Stephens Title Co.,* 257 S.W. 223, 225 (Tex. Comm'n App.1924, judgment adopted). A unilateral contract is completed by the promisee's performing the act or acts called for by the promisor, not by the promisee making any reciprocal promise or promises. *Herschbach v. City of Corpus Christi,* 883 S.W.2d 720, 733 (Tex.App.-Corpus Christi 1994, writ denied); *Shirey v. Albright,* 404 S.W.2d 152, 156 (Tex.Civ.App.-Corpus Christi 1966, writ ref'd n.r.e.). When the promisee delivers the bargained-for performance, the promisor then becomes bound to provide the promised benefit. *Dodson,* 776 S.W.2d at 805. Unless the promisee performs, or at least partly performs, the act or acts requested by the promisor, there is no binding unilateral contract. *Sunshine v. Manos,* 496 S.W.2d 195, 198 (Tex.Civ.App.-Tyler 1973, writ ref'd n.r.e.). Until that time, the promisor may revoke the offer at any time. *Id.*

▬▬▬ A unilateral contract may be formed when one of the parties makes only an illusory promise but the other party makes a non-illusory promise. *Sheshunoff,* 209 S.W.3d at 650; *Light,* 883 S.W.2d at 645 n. 6. The non-illusory promise can serve as the offer for a unilateral contract, which the promisor who made the illusory promise can accept by performance. *Id.*

▬▬▬ Appellants were at-will employees of AES. AES's promise-that "[t]he original employees who were still employed would get 5% of the value [when AES was] sold or merged"—depended on appellants' continued employment with AES until the time of a sale or merger. As explained by the Texas Supreme Court in *Light,* promises that depend on continued employment of at-will employees are illusory:

> At-will employees may contract with their employers on any matter except those which would limit the ability of either employer or employee to terminate the employment at will. Consideration for a promise, by either the employee or the employer in an at-will employment, cannot be dependent on a period of continued employment. Such a promise would be illusory because it fails to bind the promisor who always retains the option of discontinuing employment in lieu of performance.

*Light,* 883 S.W.2d at 644–45. In *Light,* the supreme court stated that "[a]ny promise made by either employer or employee that depends on an additional period of employment is illusory because it is conditioned upon something that is exclusively within the control of the promisor." *Id.* at 645 n. 5. Thus, an employer's promise of a raise to an at-will employee is illusory because it depends upon a period of continued employment. *Id.* After promising the raise, the employer could fire the at-will employee and, therefore, avoid the obligation to perform the promise. *Id.*

AES's promise was illusory because it depended on appellants' continued employment. After making the promise, AES could have terminated appellants in lieu of performance. *Light,* 883 S.W.2d at 644–45. Therefore, the controlling issue in this appeal is whether performing the act called for in an illusory promise can create a binding unilateral contract.

Appellants assert that the concept of illusory promises does not apply to unilateral agreements. Although *Light* and *Sheshunoff* both primarily involved issues relating to covenants not to compete, the supreme court in both cases stated basic contract law principles relating to the formation of unilateral contracts: "If only one promise is illusory, a unilateral contract can still be formed; the non-illusory promise can serve as an offer, which the promisor who made the illusory promise can accept by performance." *Sheshunoff,* 209 S.W.3d at 650 (citing *Light,* 883 S.W.2d at 645 n. 6). *Light* explained that an employer who makes an illusory promise can accept an employee's non-illusory promise by performance. *Light,* 883 S.W.2d at 645 n. 6. Once the employer actually performs, the fact that it was not bound to perform its illusory promise becomes irrelevant because, by performing, the employer has accepted the employee's offer and created a binding unilateral contract. *Id.*

 Based on the clearly stated unilateral contract principles in *Sheshunoff* and *Light*—"the non-illusory promise can serve as the offer"—we conclude that a non-illusory promise is required for the formation of a binding unilateral contract. *See also Fenberg v. Goggin,* 800 S.W.2d 132, 136 (Mo.Ct.App.1990) (because a party's illusory promise cannot constitute consideration in exchange for the other party's

performance, there was no unilateral contract). In this cause, AES did not make a non-illusory promise. As such, there was no non-illusory promise that could serve as an offer for a unilateral contract. Under the reasoning of *Sheshunoff* and *Light,* AES's illusory promise could not serve as the offer for a unilateral contract. Therefore, appellants could not make AES's promise enforceable by performance, and no unilateral contract was formed.[1]

Appellants rely on *Air America Jet Charter Inc. v. Lawhon,* 93 S.W.3d 441 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). Air America hired Lawhon, a pilot, as an at-will employee in 1998. In 1999, Lawhon and Air America signed a contract. In the contract, Air America agreed to provide Lawhon training as a Learjet captain and to give Lawhon a raise of $750 a month in exchange for Lawhon's agreement to remain in employment with Air America for one year after obtaining his Learjet captain's rating. *Air America,* 93 S.W.3d at 442–43. About six months after obtaining his Learjet captain's rating, Lawhon quit his employment, and Air America sued him for breach of contract and fraudulent inducement. The trial court granted summary judgment to Lawhon on Air America's claims. *Id.* at 443.

In *Air America,* the court of appeals stated that, based on Lawhon's agreement

---

1. In *Lewis v. Vitol,* No. 01–05–00367–CV, 2006 WL 1767138 (Tex.App.-Houston [1st Dist.] June 29, 2006, no pet.) (mem. op.), a former at-will employee argued that he and his former employer formed a binding bilateral contract for the payment of a bonus. The employee asserted that he promised to continue employment with the employer in exchange for the employer's promise to pay him a bonus. The employee acknowledged that his promise to continue employment was illusory. However, the employee contended that a binding bilateral contract was formed when he accepted the employer's offer of a bonus by performance consisting of showing up for work the following Monday. The court explained that both the employee's promise of continued employment and the employer's promise of a bonus were illusory. *Lewis,* 2006 WL 1767138, at *5–6. The employer's promise of a bonus was illusory because the employer could have fired the employee and avoided the obligation to pay the bonus. *Id.* The court held that, because the alleged contract was based on illusory consideration, there was no enforceable contract to pay the employee a bonus. *Id.* at *6. The reasoning of the *Lewis* court applies equally to a claim of an alleged unilateral contract based on an employer's illusory promise to pay a bonus.

in the contract "to a one year commitment of continuing employment," the contract modified Lawhon's status as an at-will employee in clear and explicit terms. *Id.* Lawhon argued that the contract lacked mutuality of obligation because it limited his right to terminate the employment (based on his one year commitment) but did not limit Air America's right to fire him at any time. Therefore, Lawhon asserted that the contract was unenforceable. *Id.* at 444.

The *Air America* court stated a number of principles relating to the formation of bilateral contracts, such as the requirement of mutuality of obligation. *Id.* The court explained that, for a binding contract to exist, there is no requirement that the consideration on each side be the same. *Id.* Thus, the contract was enforceable if any of Air America's promises provided consideration even though the contract did not limit Air America's right to terminate Lawhon. The court, relying on *Light,* addressed the issue of whether Air America's promise to provide training provided consideration for the contract. In *Light,* the supreme court held that the employer's promise to provide initial specialized training to the employee was not illusory because the promise did not depend on the employee's continued employment. *Light,* 883 S.W.2d at 646. The supreme court explained that, even if the employee had resigned or had been fired after the parties executed the agreement, the employer would still have been required to provide the initial training to the employee. *Id.* Citing *Light,* the *Air America* court held that Air America's promise to provide specialized training was not illusory and provided consideration for the contract. *Air America,* 93 S.W.3d at 444. Because Lawhon had failed to prove that the contract was illusory, the court reversed the summary judgment and remanded the case for trial. *Id.*

In a footnote, the *Air America* court addressed, without deciding, the issue of whether Air America's promise of a raise to Lawhon constituted consideration for the contract. *Air America,* 93 S.W.3d at 444 n. 2. The court, citing *Light,* correctly stated that an employer's promise of a raise to an at-will employee is illusory. The *Air America* court then cited footnote six of the *Light* opinion for the proposition that "[a]n illusory promise can be accepted and made enforceable by performance." *Id.* However, footnote six in *Light* does not stand for this proposition. Rather, as stated above, the *Light* court stated in footnote six that "the non-illusory promise can serve as an offer, which the promisor who made the illusory promise can accept by performance." *Light,* 883 S.W.2d at 645 n. 6. Therefore, we disagree with the *Air America* court's interpretation of footnote six in *Light.*

In any event, this cause is distinguishable from *Air America.* In this cause, the parties did not enter into a contract to modify appellants' status as at-will employees. Nor did appellees make any non-illusory promise that could serve as consideration for a contract. In the absence of making a non-illusory promise, appellees provided no consideration for a contract.

Appellants also rely on *In re Halliburton Co.,* 80 S.W.3d 566 (Tex.2002). In that case, the employer sent notice of a new arbitration program to the employee. The notice informed the employee that continuing his employment would constitute acceptance of the new program. *Halliburton,* 80 S.W.3d at 567. The employee continued his employment after the date set forth in the notice. After being demoted, the employee filed suit against the employer instead of complying with the terms of the arbitration program. The employer sought to compel arbitration un-

der the program. The trial court denied the employer's motion to compel arbitration, and the court of appeals dismissed the employer's petition for writ of mandamus. *Id.* at 568.

In *Halliburton,* the supreme court explained that an employer may change the terms of an at-will employment contract if (1) the employer provides notice of the change to the employee and (2) the employee accepts the change. *Halliburton,* 80 S.W.3d at 568 (citing *Hathaway v. General Mills, Inc.,* 711 S.W.2d 227, 229 (Tex. 1986)). After reviewing the evidence relating to the notice issue, the supreme court concluded that the employer had given proper notice of the new arbitration program to the employee and that the employee had accepted the change by reporting for work after the date set forth in the notice. *Id.* at 569.

In *Halliburton,* the supreme court next addressed the employee's contention that the employer's promises to arbitrate were illusory and that, therefore, the promises could not constitute consideration for his promise to arbitrate. *Id.* The supreme court held that the employer's promises were not illusory:

> In *Light,* we considered the validity of a covenant not to compete between an at-will employee and her employer. *Light,* 883 S.W.2d at 643. We held that certain promises made by the employer in the covenant were illusory because they were dependent on the at-will employee's continued employment. *Id.* at 645–46. The employer could avoid performance simply by terminating the employment relationship, while the employee was bound whether she stayed or left. *Id.* at 645.

By contrast, the [arbitration] Program [in *Halliburton* ] is not *dependent* on continuing employment. Instead, it was *accepted* by the employee's continuing employment. When [the employee] reported for work after January 1, 1998, he accepted [the employer's] offer; both [the employee] and [the employer] became bound to arbitrate any disputes between them. . . . Thus, following [the employee's] acceptance, the [arbitration] Program was not dependent on continuing employment and was not illusory. *Halliburton,* 80 S.W.3d at 569. Unlike the employer's non-illusory promises in *Halliburton,* AES's promise to appellants depended on appellants' continued employment. AES's promise required that appellants still be employed by AES at the time of a sale or merger. AES could have avoided its promise by terminating appellants from their employment before any sale or merger. Thus, AES's promise was illusory.[2]

Appellants cite a number of cases for the proposition that, historically, Texas courts have enforced employers' promises of bonuses in employment at-will relationships. *See Fujimoto v. Rio Grande Pickle Co.,* 414 F.2d 648, 653 (5th Cir.1969); *Stone v. Moore,* 375 F.2d 110, 112–13 (5th Cir.1967); *Miller v. Riata Cadillac Co.,* 517 S.W.2d 773, 775 (Tex.1974); *Danaho Ref. Co. v. Dietz,* 398 S.W.2d 307, 311–12 (Tex.Civ.App.-Corpus Christi 1965, writ ref'd n.r.e.); *Marvin Turner Eng'rs v. Allen,* 326 S.W.2d 200, 203 (Tex.Civ.App.-Austin 1959, no writ). However, none of the cited cases addressed whether the employer's promise of the bonus in question was illusory and, if so, whether the illusory promise could serve as an offer for a unilateral contract. Thus, the cases do not

---

**2.** Appellants also cite *Lopez v. Ramirez,* No. 13–04–00379–CV, 2005 WL 1643933 (Tex. App.-Corpus Christi July 14, 2005, no pet.) (mem. op.). In *Lopez,* a non-illusory promise served as the offer for a unilateral contract. *Lopez,* 2005 WL 1643933, at *2.

provide any persuasive authority for appellants' contention that there was a binding contract in this cause. Additionally, all of the cases were decided well before the supreme court's decision in *Light*. Finally, the cases are factually distinguishable from this cause. In *Fujimoto*, the employment contracts provided for the payment of bonuses based on a percentage of the employer's annual profits. *Fujimoto*, 414 F.2d at 650. *Stone* was a bankruptcy proceeding involving the issue of whether the payment of a bonus was a voidable transfer. *Stone*, 375 F.2d at 111–12. In *Miller*, the employment contract provided for an annual bonus as part of the employee's compensation. *Miller*, 517 S.W.2d at 774. *Danaho Refining* involved an employer's alleged agreement to pay an annual bonus as part of the employees' salaries or wages. *Danaho Ref.*, 398 S.W.2d at 308. In *Marvin Turner Engineers*, the employer explained a bonus schedule to the employee when the employee accepted employment. *Marvin Turner Eng'rs*, 326 S.W.2d at 201.

■ We note that appellants did not allege fraud or estoppel claims against appellees based on AES's alleged promise. Ordinarily, an estoppel claim cannot be grounded upon a promise to do something in the future. *See Citizens Nat'l Bank v. Ross Constr. Co.*, 146 Tex. 236, 206 S.W.2d 593, 595 (1947). Appellants also did not present any summary judgment evidence that they gave up other job opportunities or that their job duties changed in any way as a result of AES's alleged promise.

Rather, appellants' sole claim is that they accepted AES's offer of a bonus by their performance of continued employment and that, therefore, a binding unilateral contract was formed.

Based on *Light* and *Sheshunoff*, we conclude that AES's illusory promise could not serve as the offer for a unilateral contract. AES's illusory promise was no promise at all. The promise did not bind AES to do anything. *Light*, 883 S.W.2d at 645. Appellants could not convert AES's illusory promise into a binding non-illusory promise by their performance. Therefore, the parties did not form a binding unilateral contract.

Because the summary judgment evidence established that no contract existed, the trial court did not err in granting summary judgment to appellees. Therefore, we overrule appellants' first issue. Based on our disposition of appellants' first issue, we need not address their second issue (that the trial court erred in granting summary judgment because the agreement was not subject to the statute of frauds). Tex.R.App. P. 47.1.

### This Court's Ruling

We affirm the judgment of the trial court.