Opinion filed May 10, 2007


















 
 
  
 
 







 
 
  
 
 




Opinion filed May 10, 2007

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00118-CV

                                                    __________

 

               ED VANEGAS, JIMMY D. HALMAN, SAM ARMSTRONG, 

              ALEX
CARBAJAL, ROGER FARRINGTON, CURTIS HUFF, 

                                  AND
TITO BETANCUR, Appellants

 

                                                             V.

 

                      AMERICAN
ENERGY SERVICES, NIEWOEHNER

                     PARTNERSHIP,
L.P., RCH/HSJ/CCM/MCP I, L.P., 

                        AUTRY
STEPHENS, JOHN CARNETT, BRACK 

                      BLACKWOOD,
AND DENNIE MARTIN, Appellees

 



 

                                         On
Appeal from the 385th District Court

 

                                                        Midland County, Texas

 

                                                Trial
Court Cause No. CV-43,929

 



 

                                                                   O
P I N I O N








Ed Vanegas, Jimmy D.
Halman, Sam Armstrong, Alex Carbajal, Roger Farrington, Curtis Huff, and Tito
Betancur (appellants) brought this action against American Energy Services
(AES) and its former shareholders, Niewoehner Partnership, L.P.,
RCH/HSJ/CCM/MCP I, L.P., Autry Stephens, John Carnett, Brack Blackwood, and
Dennie Martin (appellees).  Appellants
were at-will employees of AES. 
Appellants alleged that AES breached an agreement to pay them 5% of the
proceeds received in the event of a sale or merger of AES.  Appellees filed motions for summary judgment
asserting that AES=s alleged
promise to pay appellants 5% of the proceeds in the event of a sale or merger
was illusory because it depended on the continued employment of at-will
employees.  Based on the premise that AES=s alleged promise was illusory,
appellees moved for summary judgment on the ground that no enforceable contract
existed.  The trial court granted
appellees= motions
for summary judgment.  We affirm.  AES=s
alleged promise was illusory. 
Performance of an act called for in an illusory promise cannot create a
binding unilateral contract.                          Background

AES went into business in 1996.  Appellants alleged in their petition that
they were hired by AES in 1996.  The
record shows that appellants were at-will employees of AES.  Appellants alleged that, in 1997, AES, by and
through its authorized agent or agents, made the following promise to
them:  A[I]n
the event of sale or merger of [AES], [appellants] would receive 5% of the
value received for such shares or sale of assets.@  Appellants also alleged that AES made the
promise as an inducement for them to continue employment with AES.  Appellants further alleged that, after AES
merged with AES Acquisition, Inc. in 2001, AES failed to pay them any proceeds
from the merger.  Therefore, appellants
claimed that AES breached its agreement to pay them 5% of the proceeds from any
sale or merger.

Appellants sought to recover damages from appellee
AES under a breach of contract theory. 
Appellants alleged that the appellee shareholders were individually
liable for the damages because the shareholders had Aeffectively
denuded the corporation of assets.@

Appellees filed traditional motions for summary
judgment asserting that AES=s
alleged agreement was unenforceable for two reasons.  First, appellees asserted that, because AES=s alleged promise to appellants
depended on the continued employment of appellants, who were at-will employees,
the alleged promise was illusory and did not provide the consideration
necessary for a binding contract. 
Second, appellees asserted that the alleged agreement failed to comply
with the statute of frauds.








In response, appellants asserted that a binding
unilateral contract existed.  Appellants
argued that their performance of the action requested by AES in its promise B appellants=
continued employment with AES until the merger in 2001 B
supplied the consideration necessary to support AES=s
promise to pay them 5% of the proceeds from any sale or merger.  Thus, appellants asserted that appellees= Aarguably
illusory promise was accepted by [their] performance and became enforceable as
a unilateral contract.@  Appellants also argued that the alleged
agreement did not violate the statute of frauds because it could have been
performed within one year.

The trial court granted summary judgment to
appellees.  The trial court did not
specify the ground or grounds relied on for its ruling.

                                                                 Issues
Presented

Appellants present two issues for review.  In their first issue, appellants assert that
the trial court erred in granting summary judgment because they accepted AES=s promise of a 5% incentive bonus by
performance, thereby creating a binding unilateral contract.  In their second issue, appellants assert that
the trial court erred in granting summary judgment because the agreement was
not subject to the statute of frauds.

                                                              Standard
of Review

This case involves the review of traditional
motions for summary judgment.  We will
apply the well-recognized standard of review for traditional summary
judgments.  We must consider the summary
judgment evidence in the light most favorable to the nonmovant, indulging all
reasonable inferences in favor of the nonmovant, and determine whether the
movant proved there were no genuine issues of material fact and that it was
entitled to judgment as a matter of law. 
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546 (Tex.
1985); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671 (Tex. 1979). 
Where, as in this case, a trial court=s
order granting summary judgment does not specify the ground or grounds relied
upon for its ruling, summary judgment will be affirmed on appeal if any of the
summary judgment grounds advanced by the movant are meritorious.  Dow Chem. Co. v. Francis, 46 S.W.3d
237, 242 (Tex. 2001); Carr v. Brasher,
776 S.W.2d 567, 569 (Tex.
1989).

 

 








                                                     The
Summary Judgment Record

Appellants described the alleged agreement as
follows in their answers to interrogatories: 
A[T]he
original employees who were still employed would get 5% of the value [when AES
was] sold or merged.@  Appellants stated in their answers to
interrogatories that appellee Carnett made the alleged promise to them and that
appellees Niewoehner, Blackwood, and Martin were present when Carnett made the
alleged promise.

Appellees presented an affidavit from appellee
Carnett in support of their motions for summary judgment.  Carnett stated that he was the vice president
of AES in 1996 and 1997.  He also stated
that he never promised or represented to any of the appellants that, in the
event of a sale or merger of AES, appellants would receive 5% of the value
received for such sale or assets. 
Carnett further stated that he had knowledge of appellants= personnel records, that appellants
were not subject to employment contracts or agreements during their employment
with AES, and that appellants were employees at-will during their employment
with AES.

Appellees also presented deposition testimony of
appellee Niewoehner in support of their motions for summary judgment.  Niewoehner testified that he was not present
when appellee Carnett made any agreement or promise that, in the event of a
merger or sale of AES, the original employees of AES would receive a percentage
of the value of the sale or merger.

Appellee Stephens and appellee RCN/HSJ/CCM/MCP I,
L.P. presented an affidavit from appellee Stephens in support of their motions
for summary judgment.  Stephens stated
that he never promised or represented to any of the appellants that, in the
event of a sale or merger of AES, appellants would receive 5% of the value
received for such sale or assets.








Appellants presented an affidavit from appellant
Farrington in response to appellees=
motions for summary judgment.  Farrington
stated that AES was started in the summer of 1996 and that he went to work for
AES on or about December 1, 1996. 
Farrington also stated that he Awas
promised additional compensation in the form of a percentage of the proceeds of
any sale or merger in the event that AES was sold or merged.@ 
He further stated that, when he started work at AES, the employees used
antiquated equipment and worked long hours. 
Farrington stated that the employees were concerned about the continued
survival of AES, that the employees had been through sales or mergers while
working for other companies, and that the employees expressed their concerns to
management, including appellees Carnett, Niewoehner, Martin, and Blackwood, at
an operational meeting in June 1997. 
Farrington also stated that, at the June 1997 meeting, appellee Carnett Apromised as an incentive for
[appellants=]
continued employment and hard work for AES, that in the event of sale or merger
of AES, the original employees remaining with AES at that time would get 5% of
the value of any sale or merger of AES.@  Farrington further stated that all appellants
attended the June 1997 meeting and that all appellants were still employed by
AES at the time of the merger.

                                                                        Analysis

Applying the above standard of review, we accept
as true appellant=s summary
judgment evidence that, at the June 1997 meeting, Carnett promised appellants
that, Ain the
event of sale or merger of AES, the original employees remaining with AES at
that time would get 5% of the value of any sale or merger of AES.@ 
We attribute Carnett=s
promise to AES for the purposes of our review. 
We also accept as true Farrington=s
statement that all appellants attended the June 1997 meeting and that they were
still employed by AES at the time of the merger.

A party pursuing a breach of contract claim must
prove that a valid contract existed.  See  Valero Mktg. & Supply Co. v. Kalama Int=l, 51 S.W.3d 345, 351 (Tex. App.CHouston [1st Dist.] 2001, no pet.); Aquila
Sw. Pipeline, Inc. v. Harmony Exploration, Inc., 48 S.W.3d 225, 235 (Tex. App.CSan Antonio 2001, pet. denied).  In their first issue, appellants assert that
a valid unilateral contract existed because AES=s
promise constituted an offer of an incentive bonus (if you stay here and there
is a sale or merger, you will receive a 5% payment) that they accepted by
performance (their continued employment until the time of the merger).  Appellees assert that the promise could not
serve as an offer for a unilateral contract because any such promise was
illusory and that, therefore, there was no enforceable contract.  Thus, we must determine whether AES=s promise was illusory and, if so,
whether appellants could make the promise enforceable by performance.








To analyze appellants=
claim that a binding unilateral contract existed, we first address the
distinction between bilateral contracts and unilateral contracts.  A bilateral contract is one in which there
are mutual promises between two parties to the contract, each being both a
promisor and a promisee.  Hutchings v.
Slemons, 174 S.W.2d 487, 489 (Tex.
1943).  A bilateral contract must be
based upon a valid consideration, in other words, mutuality of obligation.  Light v. Centel Cellular Co. of Tex.,
883 S.W.2d 642, 645 (Tex.
1994), modified by Alex Sheshunoff Mgmt. Servs. v. Johnson, 209 S.W.3d
644 (Tex. 2006); Iacono v. Lyons,
16 S.W.3d 92, 94 (Tex.
App.CHouston
[1st Dist.] 2000, no pet.). 
Consideration is a bargained-for exchange of promises.  Iacono, 16 S.W.3d at 94.  An illusory promise of performance
invalidates a bilateral contract.  Light,
883 S.W.2d at 645.  A promise is illusory
when it fails to bind the promisor who retains the option of discontinuing
performance.  Id.  In fact, an illusory promise is no
promise at all.  See 1 Arthur Linton Corbin, Corbin on Contracts
' 1.17 (rev. 1993).  Because an illusory promise fails to bind the
promisor, it provides no consideration for a contract.  Light, 883 S.W.2d at 644-45.     

A unilateral contract has only one promisor.  Dodson v. Stevens Transp., 776 S.W.2d
800, 805 (Tex. App.CDallas
1989, no writ).  The promisee commits
himself to nothing.  Id. 
Thus,  mutuality of obligation is
not essential for the formation of a unilateral contract.  Pace Corp. v. Jackson, 284 S.W.2d 340,
344 (Tex.
1955); Johnson v. Breckenridge-Stephens Title Co., 257 S.W. 223, 225
(Tex. Comm=n App.
1924, judgment adopted).  A unilateral
contract is completed by the promisee=s
performing the act or acts called for by the promisor, not by the promisee
making any reciprocal promise or promises. 
Herschbach v. City of Corpus Christi, 883 S.W.2d 720, 733 (Tex.
App.CCorpus
Christi 1994, writ denied); Shirey v. Albright, 404 S.W.2d 152, 156
(Tex. Civ. App.CCorpus
Christi 1966, writ ref=d
n.r.e.).  When the promisee delivers the
bargained-for performance, the promisor then becomes bound to provide the
promised benefit.  Dodson, 776
S.W.2d at 805.  Unless the promisee
performs, or at least partly performs, the act or acts requested by the
promisor, there is no binding unilateral contract.  Sunshine v. Manos, 496 S.W.2d 195, 198
(Tex. Civ. App.CTyler
1973, writ ref=d
n.r.e.).  Until that time, the promisor
may revoke the offer at any time.  Id.

A unilateral contract may be formed when one of
the parties makes only an illusory promise but the other party makes a
non-illusory promise.  Sheshunoff,
209 S.W.3d at 650; Light, 883 S.W.2d at 645 n.6.  The non-illusory promise can serve as the
offer for a unilateral contract, which the promisor who made the illusory
promise can accept by performance.  Id.








Appellants were at-will employees of AES.  AES=s
promise B that A[t]he original employees who were still
employed would get 5% of the value [when AES was] sold or merged@ B
depended on appellants=
continued employment with AES until the time of a sale or merger.  As explained by the Texas Supreme Court in Light,
promises that depend on continued employment of at-will employees are illusory:


At-will
employees may contract with their employers on any matter except those which
would limit the ability of either employer or employee to terminate the
employment at will.  Consideration for a
promise, by either the employee or the employer in an at-will employment,
cannot be dependent on a period of continued employment.  Such a promise would be illusory because it
fails to bind the promisor who always retains the option of discontinuing
employment in lieu of performance.

  

Light, 883 S.W.2d 644-45. 
In Light, the supreme court stated that A[a]ny
promise made by either employer or employee that depends on an additional
period of employment is illusory because it is conditioned upon something that
is exclusively within the control of the promisor.@  Id.
at 645 n.5.  Thus, an employer=s promise of a raise to an at-will
employee is illusory because it depends upon a period of continued
employment.  Id.  After promising the raise, the employer
could fire the at-will employee and, therefore, avoid the obligation to perform
the promise.  Id.

AES=s
promise was illusory because it depended on appellants=
continued employment.  After making the
promise, AES could have terminated appellants in lieu of performance.  Light, 883 S.W.2d at 644-45.  Therefore, the controlling issue in this
appeal is whether performing the act called for in an illusory promise can
create a binding unilateral contract.  

Appellants assert that the concept of illusory
promises does not apply to unilateral agreements.  Although Light and Sheshunoff
both primarily involved issues relating to covenants not to compete, the
supreme court in both cases stated basic contract law principles relating to
the formation of unilateral contracts:  AIf only one promise is illusory, a
unilateral contract can still be formed; the non-illusory promise can serve as
an offer, which the promisor who made the illusory promise can accept by
performance.@ Sheshunoff,
209 S.W.3d at 650 (citing Light, 883 S.W.2d at 645 n.6).  Light explained that an employer who
makes an illusory promise can accept an employee=s
non-illusory promise by performance.  Light,
883 S.W.2d at 645 n.6.  Once the employer
actually performs, the fact that it was not bound to perform its illusory
promise becomes irrelevant because, by performing, the employer has accepted the
employee=s offer
and created a binding unilateral contract. 
Id.  








Based on the clearly stated unilateral contract
principles in Sheshunoff and Light B
Athe
non-illusory promise can serve as the offer@
B we conclude that a non-illusory
promise is required for the formation of a binding unilateral contract.  See also Fenberg v. Goggin, 800 S.W.2d
132, 136 (Mo. Ct. App. 1990) (because a party=s
illusory promise cannot constitute consideration in exchange for the other
party=s
performance, there was no unilateral contract). 
In this cause, AES did not make a non-illusory promise.  As such, there was no non-illusory promise
that could serve as an offer for a unilateral contract.  Under the reasoning of Sheshunoff and Light,
AES=s illusory promise could not serve as
the offer for a unilateral contract. 
Therefore, appellants could not make AES=s
promise enforceable by performance, and no unilateral contract was formed.[1]

Appellants rely on Air America Jet Charter Inc.
v. Lawhon, 93 S.W.3d 441 (Tex. App.C  Houston [14th Dist.] 2002, pet. denied).  Air America hired Lawhon, a pilot, as
an at-will employee in 1998.  In 1999,
Lawhon and Air America
signed a contract.  In the contract, Air
America agreed to provide Lawhon training as a Learjet captain and to give
Lawhon a raise of $750 a month in exchange for Lawhon=s
agreement to remain in employment with Air America for one year after obtaining
his Learjet captain=s
rating.  Air America, 93
S.W.3d at 442-43.  About six months after
obtaining his Learjet captain=s
rating, Lawhon quit his employment, and Air America sued him for breach of
contract and fraudulent inducement.  The
trial court granted summary judgment to Lawhon on Air America=s claims.  Id.
at 443.








In Air America, the court of appeals stated
that, based on Lawhon=s
agreement in the contract Ato
a one year commitment of continuing employment,@
the contract modified Lawhon=s
status as an at-will employee in clear and explicit terms.  Id.  Lawhon argued that the contract lacked
mutuality of obligation because it limited his right to terminate the
employment (based on his one year commitment) but did not limit Air America=s right to fire him at any time.  Therefore, Lawhon asserted that the contract
was unenforceable.  Id. at 444.    

The Air America court stated a number of
principles relating to the formation of bilateral contracts, such as the
requirement of mutuality of obligation. Id.  The court explained that, for a binding
contract to exist, there is no requirement that the consideration on each side
be the same.  Id. 
Thus, the contract was enforceable if any of Air America=s
promises provided consideration even though the contract did not limit Air America=s right to terminate Lawhon.  The court, relying on Light, addressed
the issue of whether Air America=s promise to provide training provided
consideration for the contract.  In Light,
the supreme court held that the employer=s
promise to provide initial specialized training to the employee was not
illusory because the promise did not depend on the employee=s continued employment.  Light, 883 S.W.2d at 646.  The supreme court explained that, even if the
employee had resigned or had been fired after the parties executed the
agreement, the employer would still have been required to provide the initial
training to the employee.  Id.  Citing Light, the Air America
court held that Air America=s promise to provide specialized
training was not illusory and provided consideration for the contract.  Air America, 93 S.W.3d at 444.  Because Lawhon had failed to prove that
the contract was illusory, the court reversed the summary judgment and remanded
the case for trial.  Id. 

In a footnote, the Air America court
addressed, without deciding, the issue of whether Air America=s promise of a raise to Lawhon
constituted consideration for the contract. 
Air America, 93 S.W.3d at 444 n.2.  The court, citing Light, correctly
stated that an employer=s
promise of a raise to an at-will employee is illusory.  The Air America court then cited
footnote six of the Light opinion for the proposition that A[a]n illusory promise can be accepted
and made enforceable by performance.@  Id.  However, footnote six in Light does
not stand for this proposition.  Rather,
as stated above, the Light court stated in footnote six that Athe non-illusory promise can serve as
an offer, which the promisor who made the illusory promise can accept by
performance.@  Light, 883 S.W.2d at 645 n.6.  Therefore, we disagree with the Air
America court=s
interpretation of footnote six in Light.








In any event, this cause is distinguishable from Air
America.  In this cause, the parties did not enter
into a contract to modify appellants=
status as at-will employees.  Nor did
appellees make any non-illusory promise that could serve as consideration for a
contract.  In the absence of making a
non-illusory promise, appellees provided no consideration for a contract.

Appellants also rely on In re Halliburton Co.,
80 S.W.3d 566 (Tex.
2002).  In that case, the employer sent
notice of a new arbitration program to the employee.  The notice informed the employee that
continuing his employment would constitute acceptance of the new program.  Halliburton, 80 S.W.3d at 567.  The employee continued his employment after
the date set forth in the notice.  After
being demoted, the employee filed suit against the employer instead of
complying with the terms of the arbitration program.  The employer sought to compel arbitration
under the program.  The trial court denied
the employer=s motion
to compel arbitration, and the court of appeals dismissed the employer=s petition for writ of mandamus.  Id.
at 568.  

In Halliburton, the supreme court explained
that an employer may change the terms of an at-will employment contract if (1)
the employer provides notice of the change to the employee and (2) the employee
accepts the change.  Halliburton,
80 S.W.3d at 568 (citing Hathaway v. General Mills, Inc., 711 S.W.2d
227, 229 (Tex.
1986)).  After reviewing the evidence
relating to the notice issue, the supreme court concluded that the employer had
given proper notice of the new arbitration program to the employee and that the
employee had accepted the change by reporting for work after the date set forth
in the notice.  Id. at 569.  

In Halliburton, the supreme court next
addressed the employee=s
contention that the employer=s
promises to arbitrate were illusory and that, therefore, the promises could not
constitute consideration for his promise to arbitrate.  Id.  The supreme court held that the employer=s promises were not illusory:

In
Light, we considered the validity of a covenant not to compete between
an at-will employee and her employer.  Light,
883 S.W.2d at 643.  We held that certain
promises made by the employer in the covenant were illusory because they were
dependent on the at-will employee=s
continued employment.  Id. at 645-46.  The employer could avoid performance simply
by terminating the employment relationship, while the employee was bound
whether she stayed or left.  Id. at 645.

 








By contrast, the [arbitration] Program [in Halliburton]
is not dependent on continuing employment.  Instead, it was accepted by the
employee=s
continuing employment.  When [the
employee] reported for work after January 1, 1998, he accepted [the employer=s] offer; both [the employee] and [the
employer] became bound to arbitrate any disputes between them. . . . Thus,
following [the employee=s]
acceptance, the [arbitration] Program was not dependent on continuing
employment and was not illusory. 

 

Halliburton, 80 S.W.3d at 569.  Unlike the employer=s
non-illusory promises in Halliburton, AES=s
promise to appellants depended on appellants=
continued employment.  AES=s promise required that appellants
still be employed by AES at the time of a sale or merger.  AES could have avoided its promise by
terminating appellants from their employment before any sale or merger.  Thus, AES=s
promise was illusory.[2]

Appellants cite a number of cases for the
proposition that, historically, Texas
courts have enforced employers=
promises of bonuses in employment at-will relationships.  See Fujimoto v. Rio Grande Pickle Co.,
414 F.2d 648, 653 (5th Cir. 1969); Stone v. Moore, 375 F.2d 110, 112-13
(5th Cir. 1967); Miller v. Riata Cadillac Co., 517 S.W.2d 773, 775 (Tex.
1974); Danaho Ref. Co. v. Dietz, 398 S.W.2d 307, 311-12 (Tex. Civ. App.CCorpus Christi 1965, writ ref=d n.r.e.); Marvin Turner Eng=rs v. Allen, 326 S.W.2d 200, 203
(Tex. Civ. App.CAustin
1959, no writ).  However, none of the
cited cases addressed whether the employer=s
promise of the bonus in question was illusory and, if so, whether the illusory
promise could serve as an offer for a unilateral contract.  Thus, the cases do not provide any persuasive
authority for appellants=
contention that there was a binding contract in this cause.  Additionally, all of the cases were decided
well before the supreme court=s
decision in Light.  Finally, the
cases are factually distinguishable from this cause.  In Fujimoto, the employment contracts
provided for the payment of bonuses based on a percentage of the employer=s annual profits.  Fujimoto, 414 F.2d at 650.  Stone was a bankruptcy proceeding
involving the issue of whether the payment of a bonus was a voidable
transfer.  Stone, 375 F.2d at
111-12.  In Miller, the employment
contract provided for an annual bonus as part of the employee=s compensation.  Miller, 517 S.W.2d at 774.  Danaho Refining involved an employer=s alleged agreement to pay an annual
bonus as part of the employees=
salaries or wages.  Danaho Ref.,
398 S.W.2d at 308.  In Marvin Turner
Engineers, the employer explained a bonus schedule to the employee
when the employee accepted employment.  Marvin
Turner Eng=rs,
326 S.W.2d at 201.








We note that appellants did not allege fraud or
estoppel claims against appellees based on AES=s
alleged promise.  Ordinarily, an estoppel
claim cannot be grounded upon a promise to do something in the future.  See Citizens Nat=l Bank v. Ross Constr. Co., 206
S.W.2d 593, 595 (Tex.
1947).  Appellants also did not present
any summary judgment evidence that they gave up other job opportunities or that
their job duties changed in any way as a result of AES=s
alleged promise.  Rather, appellants= sole claim is that they accepted AES=s offer of a bonus by their performance
of continued employment and that, therefore, a binding unilateral contract was
formed.

Based on Light and Sheshunoff, we
conclude that AES=s
illusory promise could not serve as the offer for a unilateral contract.  AES=s
illusory promise was no promise at all. 
The promise did not bind AES to do anything.  Light, 883 S.W.2d at 645.  Appellants could not convert AES=s illusory promise into a binding
non-illusory promise by their performance. 
Therefore, the parties did not form a binding unilateral contract.  

Because the summary judgment evidence established
that no contract existed, the trial court did not err in granting summary
judgment to appellees.  Therefore, we
overrule appellants= first
issue.  Based on our disposition of
appellants= first
issue, we need not address their second issue (that the trial court erred in
granting summary judgment because the agreement was not subject to the statute
of frauds).  Tex. R. App. P. 47.1.

                                                               This
Court=s Ruling

We affirm the judgment of the trial court.

 

 

TERRY McCALL

JUSTICE

 

May 10, 2007

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.











[1]In Lewis v. Vitol, No. 01-05-00367-CV, 2006 WL
1767138 (Tex.
App.CHouston [1st Dist.] June 29, 2006, no pet.) (mem. op.),
a former at-will employee argued that he and his former employer formed a
binding bilateral contract for the payment of a bonus.  The employee asserted that he promised to
continue employment with the employer in exchange for the employer=s promise to pay him a bonus.  The employee acknowledged that his promise to
continue employment was illusory. 
However, the employee contended that a binding bilateral contract was
formed when he accepted the employer=s offer
of a bonus by performance consisting of showing up for work the following
Monday.  The court explained that both
the employee=s promise of continued employment and the employer=s promise of a bonus were illusory.  Lewis, 2006 WL 1767138, at *5-6.  The employer=s promise
of a bonus was illusory because the employer could have fired the employee and
avoided the obligation to pay the bonus. 
Id.  The court held that, because the alleged
contract was based on illusory consideration, there was no enforceable contract
to pay the employee a bonus.  Id. at *6.  The reasoning of the Lewis court
applies equally to a claim of an alleged unilateral contract based on an
employer=s illusory promise to pay a bonus.  





[2]Appellants also cite Lopez v. Ramirez, No.
13-04-00379-CV, 2005 WL 1643933 (Tex. App.CCorpus
Christi July 14, 2005, no pet.) (mem. op.). 
In Lopez, a non-illusory promise served as the offer for a
unilateral contract.  Lopez, 2005
WL 1643933, at *2.